912 F.2d 463
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Martha E. MYLES, Administratrix of the Estate of Jennifer
Michelle Edwards, deceased, Plaintiff-Appellee,
v.
Henry Lucius LAFFITTE, M.D., Thomas Baker Warren, M.D.,
Doctors Laffitte and Warren, P.A., Defendants-Appellants.
 No. 90-2004.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1990.
Decided Aug. 28, 1990.
 
 Appeal from the United States District Court for the District of South Carolina, at Aiken. Charles E. Simons, Jr., Senior District Judge. (CA-87-338-1-6; CA-87-339-1-6)
 Monteith P. Todd, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., (argued), for appellants; William C. Hubbard, Nelson, Mullins, Riley & Scarborough, Columbia, S.C., on brief.
 Ellis I. Kahn, Solomon, Kahn, Smith & Baumil, Charleston, S.C., for appellee.
 D.S.C.
 AFFIRMED.
 Before PHILLIPS, MURNAGHAN and SPROUSE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Here we face what may be the final installment of a long and tortured judicial saga over whether, for diversity purposes, citizenship should be determined in a suit brought by a personal representative (executor or executrix, administrator or administratrix) by reference to that of the decedent or to that of the personal representative.
 
 
 2
 The story commenced with Mecom v. Fitzsimmons Drilling Co., 284 U.S. 183 (1931), which indicated that diversity vel non was to be ascertained by turning to the personal representative's citizenship. Over the years Mecom has been the subject of controversy and has been departed from when the personal representative was not the real party in interest. E.g., Bishop v. Hendricks, 495 F.2d 289 (4th Cir.), cert. denied, 419 U.S. 1056 (1974); Lester v. McFadden, 415 F.2d 1101 (4th Cir.1969). One recent attempt at an assault on the rule of law announced in Mecom ended in its reaffirmation, albeit not without a spirited dissent, in Krier-Hawthorne v. Beam, 728 F.2d 658 (4th Cir.1984). The Mecom rule has been changed by statute coming into effect only after the suit we must concern ourselves with was commenced, see Judicial Improvements Act of 1988, Pub.L. No. 100-702, Sec. 202(a), 102 Stat. 4642, 4646 (1988) (codified at 28 U.S.C. Sec. 1332(c)(2)), largely as a result of widespread dissatisfaction. See, e.g., American Law Institute, Study of the Division of Jurisdiction Between State and Federal Courts Sec. 1301(b)(4) (1969). The statutory change, which makes the decedent's citizenship controlling, affects only those suits brought after May 18, 1989, see Pub.L. No. 100-702 at Sec. 202(b), and therefore does not affect the action before us, which was commenced on February 17, 1987.[1]
 
 
 3
 In the present case, involving causes of action for pain and suffering and wrongful death, a South Carolina infant's death occurred in circumstances leading to malpractice charges against two South Carolina physicians. The infant's parents, at the time of her death, were South Carolina citizens, and the father has throughout remained a South Carolina citizen. The mother, with the express purpose of creating diversity, moved to Georgia and genuinely acquired citizenship of that state.[2]
 
 
 4
 The mother, having secured appointment by a South Carolina Probate Court as the personal representative of the deceased child, instituted suit in the United States District Court for the District of South Carolina, basing jurisdiction on diversity grounds, against the South Carolina physicians.[3] The defendants, not surprisingly, in contesting jurisdiction, point to the many South Carolina, i.e., local, aspects of the case, especially the decedent child's citizenship in that state, and the provision of all medical services in that state.
 
 
 5
 However, appealing as may be the argument that the local nature of the case should preclude federal jurisdiction, it gives no weight to the plaintiff's justified reliance upon the established law.[4] Perhaps more importantly, our cases which have not allowed the citizenship of the representative to govern have evinced a concern about irregular appointments of a representative, not about litigation-oriented post-appointment behavior of the representative. See, e.g., Bishop at 293 ("It may be assumed that if there is a valid reason for the appointment of an out-of-state administrator that gives to his representation greater substantiality than a mere administrator ad litem, the citizenship of the administrator may be determinative of diversity."). It is also to be borne in mind that the situation is a rare one indeed where a court of less vaunted status than the Supreme Court may disregard, indeed overrule, a pertinent Supreme Court holding. The extremeness of that rarity is especially prevalent where, as here, any possible dissatisfaction with the Supreme Court holding has been done away with for the future in any case initiated after the 1988 statute's effective date.
 
 
 6
 It should not be overlooked that the end result is not the tarnishment of justice through the application of a harsh law. All that is involved is whether the litigation shall proceed in the United States District Court for the District of South Carolina or in a South Carolina state court. We are not prepared to hold that either of those possible venues would produce an unjust, i.e., unfair, result.
 
 
 7
 Accordingly, the judgment that there is jurisdiction in the South Carolina federal district court is
 
 
 8
 AFFIRMED.
 
 
 
 [1]
 There is no contention that the statute is retroactive, the defendants at most contending only that the 1988 statute served to clarify previously existing law
 
 
 [2]
 The district court, upon consideration of the pertinent facts, made a finding, not clearly erroneous, and not contested on appeal, establishing that the mother's Georgia citizenship had been, in a bona fide manner, obtained. Such an alteration of citizenship for the purpose of creating diversity is proper. Rowland v. Patterson, 882 F.2d 97, 100 (4th Cir.1989) (en banc ); Morris v. Gilmer, 129 U.S. 315, 328 (1889)
 
 
 [3]
 By statute, the wrongful death action, while any recovery on the cause of action for the husband inhered in him directly, not in the decedent's estate, had to be brought by the personal representative. See S.C.Code Ann. Sec. 15-51-20 (Law.Co-op.1977)
 
 
 [4]
 Even if the established law as of the time suit was filed was so aberrational as to justify overruling, the situation would almost certainly be one calling for any change in the law to be prospective only. McSparran v. Weist, 402 F.2d 867, 876-77 (3d Cir.1968), cert. denied, 395 U.S. 903 (1969). Such an approach would be of no avail to the defendants in the instant case and of slight, if any, help to others in view of the fact that Congress has acted to change the law in futuro