972 F.2d 166
 Sandra K. MILAM, widow of Steven R. Geiger, individually and
as natural tutrix of the estates of her minor
children, Emil J. Geiger and Amy N.
Geiger, Plaintiffs-Appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee.
 No. 91-1878.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 18, 1992.
Decided Aug. 17, 1992.
 
 Paul H. Due (argued), Due, Smith, Caballero & Price, Baton Rouge, La., Thomas J. Young, Young & Riley, Indianapolis, Ind., for plaintiffs-appellants.
 John D. Cochran, Jr. (argued), Kenneth M. Wahnsiedler, Young, Cochran & Reese, Indianapolis, Ind., Anthony J. Clesi, Ward & Clesi, New Orleans, La., for defendant-appellee.
 Before POSNER and KANNE, Circuit Judges, and VAN SICKLE, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 Stephen Geiger was driving eastbound on an interstate highway in Indiana when a truck crossed the median from the westbound lanes and struck his car, killing him. The driver of the truck had lost control when it struck another truck's wheel (that is, the tire and rim assembly) that, we are required to assume, was upright and rolling in his lane. It was night and no one saw where the wheel came from or even whether it was rolling toward or away from, or possibly at an angle to, the truck that struck it. It might have come off the axle of a truck in front (possibly even in one of the eastbound lanes) or have fallen from the back of a truck. Conceivably it had been lying by the highway and was struck by a vehicle and sent spinning. It may even have been rolled into the highway by mischief makers, although this is unlikely because a truck wheel is heavy and the stretch of the highway on which the accident occurred is flat.
 
 
 2
 State Farm had issued an insurance policy to Geiger that promised to "pay damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by accident arising out of the operation, maintenance or use of an uninsured motor vehicle." The policy defines "uninsured motor vehicle" to include "a 'hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes [either the insured or] the vehicle the insured is operating." Evidence in a wrongful death suit (the outcome of which we do not know) against the driver of the truck that had struck Geiger's car head-on revealed that in all likelihood the offending wheel had indeed been in motion. Geiger's widow inferred that it had come off a truck whose unknown driver would have been legally liable for the accident to her husband for having allowed the wheel to come off and menace other users of the highway. So she made a claim under the uninsured-motorist policy, but State Farm refused to pay.
 
 
 3
 She had moved to Louisiana after the death of her husband, together with their two children, and she filed suit on behalf of herself and the children against State Farm in a Louisiana state court to collect under the policy. The parties being of diverse citizenship and the defendant a nonresident of Louisiana, the suit was removed to a federal district court in Louisiana, then transferred pursuant to 28 U.S.C. § 1404(a) to a federal district court in Indiana, then dismissed on State Farm's motion for summary judgment because "where, as here, the plaintiffs offer no evidence of a motor vehicle which played a causal role in the accident by starting a 'continuous and contemporaneously transmitted force,' and since a wheel and tire assembly is not itself a motor vehicle, the court concludes that no uninsured motorist coverage exists."
 
 
 4
 A jurisdictional question (not remarked by the parties or the district judge) detains us briefly en route to the merits. Mr. Geiger was a citizen of Illinois, as is State Farm, and under the diversity statute the legal representative of a decedent is deemed to be a citizen of the same state as the decedent was. 28 U.S.C. § 1332(c)(2). This provision did not become effective until after this suit was filed, see Pub.L. 100-702, § 202(b) (1988), but the law in this circuit before then was to the same effect. Wilsey v. Eddingfield, 780 F.2d 614 (7th Cir.1985). The law in the Fifth Circuit was to the contrary, however, Bianca v. Parke-Davis Pharmaceutical Division, 723 F.2d 392 (5th Cir.1984)--there the citizenship of the representative was what counted for diversity purposes--thus presenting us with the interesting question whether, at least in jurisdictional matters, the law of the transferor circuit should govern, by analogy to the principle that the applicable choice of law rule is that of the transferor rather than transferee state. Ferens v. John Deere Co., 494 U.S. 516, 110 S.Ct. 1274, 108 L.Ed.2d 443 (1990); Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964); Barron v. Ford Motor Co., 965 F.2d 195, 197 (7th Cir.1992). (Speaking of choice of law, we note that the parties agree that either Indiana or Illinois law governs the substantive issues in this case, and since there is no apparent difference between the pertinent legal doctrines of the two states we needn't decide which state's law to apply.) It would be a little odd if the federal district court in Louisiana had jurisdiction of this suit when it was removed but the federal district court in Indiana to which it was transferred did not.
 
 
 5
 We need not resolve the issue, because of an oddity of Louisiana law. (That law is based on the Code Napoleon, so much of it is odd from a common law perspective.) Louisiana apparently does not regard a decedent's estate as an entity on behalf of which a lawsuit can be brought. La.Civ.Code art. 2315.1 (1991); Davis v. State Farm Mutual Ins. Co., 208 So.2d 412 (La.App.1968). So Mrs. Geiger brought this suit not as the legal representative of her husband's estate but in her own behalf and as the guardian of her children. As she and the children are the beneficiaries of the uninsured motorist policy, they have a financial stake that will support this suit. But she is not suing as a representative of her husband's estate, and therefore the main objection to basing diversity jurisdiction on the representative's own citizenship--that it facilitates spurious invocations of the diversity jurisdiction (the estate of a state resident could sue another state resident in federal court by appointing a nonresident executor)--is absent.
 
 
 6
 We turn to the merits. In the usual hit and run case, the only issue under an insurance policy that promises to pay the damages for which the driver of the unidentified vehicle would have been legally liable to the insured if he could have been sued is whether the unknown driver was negligent. In the subclass of cases illustrated by the present one, however, the immediate cause of the victim's injury is not the unidentified vehicle itself but some object--whether part of the vehicle, or part of the vehicle's load--that comes off or falls off or out of the vehicle and strikes the victim or his vehicle. Here a third vehicle, the truck, supplied the propulsive force that made the spinning tire an agency of harm, but most courts believe that the presence of such an intermediary between the unidentified vehicle and the victim makes no difference. Southern Farm Bureau Casualty Ins. Co. v. Brewer, 507 So.2d 369 (Miss.1987); In re Arbitration Between New York City Health & Hospitals Corp. and Degorter, 133 Misc.2d 93, 506 N.Y.S.2d 644 (S.Ct.1986); Kersten v. Detroit Automobile Inter-Insurance Exchange, 82 Mich.App. 459, 469-70, 267 N.W.2d 425, 430 (1978); State Farm Mutual Automobile Ins. Co. v. Mitchell, 553 S.W.2d 691, 692 (Ky.1977) (per curiam). The problem lies rather with the fact that the agency of harm is not the unidentified vehicle itself but a jettisoned part of the vehicle or its load.
 
 
 7
 These cases of "indirect" physical contact make judges worry about an increased danger of fraudulent claims, about the difficulty (notwithstanding the doctrine of res ipsa loquitur ) of determining whether the driver or owner or manufacturer of the unidentified vehicle was actually negligent, and about the further difficulty of holding this class of cases separate from a third class, that of accidents caused by vehicular debris, a class of accidents that stretches--most courts think to the breaking point--the meaning of "hit and run accident." Wynn v. Doe, 255 S.C. 509, 180 S.E.2d 95 (1971); Kersten v. Detroit Automobile Inter-Insurance Exchange, supra, 82 Mich.App. at 471-72, 267 N.W.2d at 431; Barnes v. Nationwide Mutual Ins. Co., 186 Cal.App.3d 541, 230 Cal.Rptr. 800 (1986); contra, Adams v. Mr. Zajac, 110 Mich.App. 522, 313 N.W.2d 347 (1981). Suppose a truck loses a tire or a part of its load, which falls on the highway and lies there, and ten minutes--or an hour--later a driver collides with it. Should he be allowed to file a claim under his uninsured motorist policy on the theory that the tire he hit was once a part of or carried in a vehicle whose owner is unknown?
 
 
 8
 At first blush there seems no objection, because, but for whatever deficiencies in the operation or maintenance of the vehicle caused the debris, the collision would not have occurred. However, "but for" is rarely an adequate notion of cause. We do not say that since, in all probability, Mr. Geiger would not have had an accident on I-70 if Columbus had not discovered America, Columbus caused the accident. Cf. Berry v. Sugar Notch Borough, 191 Pa. 345, 43 Atl. 240 (1899); Central of Georgia Ry. v. Price, 106 Ga. 176, 32 S.E. 77 (1898). What we pick out from the welter of necessary or sufficient conditions as "the cause" of some event depends on the nature of our interest in the event. If we were historians of technology we might attribute Geiger's accident to the inventor of the internal combustion engine. But in fact our interest in the causality of the accident flows from the uninsured motorist policy that State Farm had issued to Geiger. The main purpose of such a policy is to guarantee that a driver who is involved in a collision can obtain tort damages even if the other driver is either unknown or financially irresponsible. In the case of a collision with a vehicle part or load that has come to rest, there is no other driver.
 
 
 9
 But the policy is not quite so confined. It speaks of owner as well as driver, and of the maintenance as well as operation or use of the vehicle. However, it also requires that the vehicle have struck the insured (or his vehicle), and this implies a rather more direct, a more elementary causality than in our hypothetical case. We know that striking is possible at a distance between the striker and the struck, so if the vehicle throws off some object which strikes the insured's vehicle missile-like, the accident is covered by the policy. But when the object comes to rest, and is struck rather than doing the striking--a difference that under the name trespass versus case played a fundamental role in tort pleading until modern times--the language of the policy can no longer be interpreted as providing coverage. We have said that ordinary-language meanings should guide the interpretation of insurance policies issued to individuals. Senkier v. Hartford Life & Accident Ins. Co., 948 F.2d 1050, 1052-53 (7th Cir.1991). So, save possibly in Michigan, Adams v. Mr. Zajac, supra--but see Kersten v. Detroit Automobile Inter-Insurance Exchange, supra--the insured would lose in our hypothetical case. Blankenbaker v. Great Central Ins. Co., 151 Ind.App. 693, 702, 281 N.E.2d 496, 501-02 (1972).
 
 
 10
 The courts express the distinction between the missile case and the struck-when-at-rest case in such terms as "continuous and contemporaneously transmitted force," which the district court quoted from Yutkin v. United States Fidelity & Guaranty Co., 146 Ill.App.3d 953, 955, 100 Ill.Dec. 493, 495, 497 N.E.2d 471, 473 (1986), or, from the same opinion, but more obscurely, by the phrase "a causal connection consisting of a substantial nexus between the hit-and-run vehicle and the intermediate object" (the wheel, in our case). 146 Ill.App.3d at 956, 100 Ill.Dec. at 495, 497 N.E.2d at 473. Some cases, however, add that there must be "objective evidence" that the intermediate object came from a vehicle in motion. Allied Fidelity Ins. Co. v. Lamb, 361 N.E.2d 174, 178 (Ind.App.1977). State Farm interprets this to mean that there must be (as in fact some states require by statute, see, e.g., National Surety Corp. v. O'Dell, 195 Ga.App. 374, 393 S.E.2d 504 (1990)) eyewitness testimony to the existence of the unidentified vehicle, in order to negate any inference that the "intermediate object" had come to rest. Inferential evidence of the existence of the vehicle is not enough. The district judge accepted the distinction.
 
 
 11
 The question whether "objective evidence" is required to establish the required causality--is it one of federal or of state law? Even in diversity cases, the rules of evidence applied are the federal rules, not state rules of evidence. Barron v. Ford Motor Co., supra, 965 F.2d at 198, and cases cited there. But where a state in furtherance of its substantive policy makes it more difficult to prove a particular type of state-law claim, the rule by which it does this, even if denominated a rule of evidence or cast in evidentiary terms, will be given effect in a diversity suit as an expression of state substantive policy. Id.; Monetti, S.P.A. v. Anchor Hocking Corp., 931 F.2d 1178, 1181-82 (7th Cir.1991). The parol evidence rule is an obvious example. Perhaps the "objective evidence" rule is another--if there is such a rule. We think there is not. Adams v. Mr. Zajac, supra. Courts are justifiably concerned about the danger of fraudulent claims in hit and run cases in which there is no collision with the unknown vehicle itself, and that concern surfaces in cases in which the evidence of "indirect" physical contact is weak. It does not follow that courts insist on "objective" evidence in such cases but are content with "subjective" evidence everywhere else. What do these terms mean? That circumstantial evidence can never prove that the object that struck the victim came from a moving vehicle seconds before? What if the plaintiffs' and the defendant's expert witnesses had agreed that the wheel which struck the truck that struck Geiger's car could have been put in motion only by having fallen off the axle of a moving truck two seconds before the accident? Would it be better evidence if the driver of the truck that struck Geiger's car had testified that he thought he saw a truck throw a wheel in front of him immediately before the accident? Not only can eyewitness testimony be unreliable, Elizabeth F. Loftus & James M. Doyle, Eyewitness Testimony: Civil and Criminal (1987), but all evidence, including eyewitness testimony, is inferential. The inferential process that connects light waves striking a two-dimensional surface (the retina) to articulate description of three-dimensional objects in motion is swift and unconscious but is none the less inferential. It has no special priority over admissions, accident reconstructions, perceptions of taste, sound, and feel, fingerprint evidence, and the myriad other forms in which raw data are beaded on chains of perception and analysis. All evidence is probabilistic, and therefore uncertain; eyewitness testimony and other forms of "direct" evidence have no categorical epistemological claim to precedence over circumstantial or even explicitly statistical evidence. United States v. Chaidez, 919 F.2d 1193, 1200 (7th Cir.1990); Krist v. Eli Lilly & Co., 897 F.2d 293, 296-97 (7th Cir.1990); Branion v. Gramly, 855 F.2d 1256, 1264, 1266 (7th Cir.1988); Riordan v. Kempiners, 831 F.2d 690, 698 (7th Cir.1987); DePass v. United States, 721 F.2d 203, 207 (7th Cir.1983) (dissenting opinion); Jonathan J. Koehler, "The Probity/Policy Distinction in the Statistical Evidence Debate," 66 Tul.L.Rev. 141, 143 (1991).
 
 
 12
 State Farm's faith in the possibility of unmediated perception, and hence in the priority of eyewitness testimony over inference (as if such testimony were not to a high degree inferential), denies modern science and modern philosophy. State Farm tells us that "inferential evidence and objective [eyewitness] evidence are mutually exclusive," so that even though we are required in the posture of the case to assume that the wheel was upright and in motion when it struck Geiger's car, we cannot infer that it came from a vehicle. We asked State Farm's lawyer at argument, "What if, under the laws of physics, every other source could be ruled out?" Not good enough, he answered. So much for physics.
 
 
 13
 The expert testimony presented in the wrongful death action (testimony that was submitted to the district court in opposition to the motion for summary judgment) created a high probability that the offending wheel was indeed rolling upright when it hit the truck (not at rest, as in Blankenbaker, where it was put in motion by the victim's car) and caused it to collide with Geiger's car. The natural inference was that the wheel had come off or fallen off another truck moments before. The natural inference may be wrong, but that is a question of fact for trial--not something to be rejected on summary judgment because it lacks "objectivity." It is a factual question that if resolved in the plaintiffs' favor establishes their entitlement to benefits under the uninsured motorist policy issued by State Farm. Illinois National Ins. Co. v. Palmer, 116 Ill.App.3d 1067, 72 Ill.Dec. 454, 452 N.E.2d 707 (1983).
 
 
 14
 REVERSED.
 
 
 
 *
 Hon. Bruce M. Van Sickle of the District of North Dakota, sitting by designation