998 F.2d 1009
 26 Fed.R.Serv.3d 246
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Brenda JANEAU, Plaintiff-Appellant,
v.
PITMAN MANUFACTURING COMPANY, INCORPORATED, Defendant-Appellee,
and
Duke Power Company; B & D Contractors, Incorporated, Defendants.
 No. 92-1923.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 5, 1993.
Decided: July 27, 1993.
 
 Appeal from the United States District Court for the Western District of North Carolina, at Asheville.
 Michael P. Wilty, KEATY & KEATY, for Appellant.
 Francis Horatio Brown, III, LEMLE & KELLEHER, for Appellee.
 Robert B. Keaty, Eugene P. Redman, KEATY & KEATY, for Appellant.
 George Frazier, LEMLE & KELLEHER, for Appellee.
 W.D.N.C.
 AFFIRMED.
 Before PHILLIPS and MURNAGHAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 OPINION
 
 1
 Brenda Janeau brought a products liability claim on behalf of her son's estate against Pitman Manufacturing Company which manufactured the heavy crane her son was operating when he died. Janeau was cited several times for delay and failure to respond to defense requests and court orders. The district court threatened to sanction Janeau and twice dismissed her case. The second dismissal was with prejudice and was based on Fed. R. Civ. P. 16(f) (failure to obey a scheduling or pretrial order), Fed. R. Civ. P. 37(b)(2)(C) (failure to obey an order to permit or provide discovery), and Fed. R. Civ. P. 41(b) (failure to prosecute or to comply with the rules or any order of the court). Janeau has appealed the district court's dismissal.
 
 
 2
 On December 5, 1988, John Ray Janeau, then an employee of Southeastern Boring Contractors and a resident of North Carolina, was electrocuted in a fatal construction site accident in Charlotte, North Carolina. At the time of the accident, John Ray Janeau was operating a truck-mounted crane manufactured by Pitman Manufacturing Company, a Pennsylvania corporation, at a job site maintained and managed by B & D Contractors, a North Carolina corporation, which had subcontracted a portion of the work to Southeastern. The crane came into contact with an energized power line owned and maintained by Duke Power Company, a North Carolina corporation. John Ray Janeau was electrocuted and killed instantly.
 
 
 3
 On November 2, 1989, John Ray Janeau's mother, Brenda Janeau, was appointed provisional administratrix of the"Succession of John Ray Janeau" by the 25th Judicial District Court for the Parish of Plaquemines, Louisiana, where she resided. She commenced the present wrongful death action against Pitman in the Civil District Court for the Parish of New Orleans, Louisiana, on November 29, 1989. Her claim was predicated on the theory that the crane had design or manufacturing defects and that Pitman had a duty to warn of such hazards and dangers.
 
 
 4
 Pitman filed a notice of removal on January 4, 1990, thereby removing the case to the United States District Court for the Eastern District of Louisiana. After some preliminary discovery, the case was transferred on June 20, 1990, to the United States District Court for the Western District of North Carolina, Charlotte Division, upon Pitman's motion.
 
 
 5
 Six months after the case was transferred to North Carolina, Brenda Janeau first communicated with the district court in Charlotte. Without offering any explanation for the delay, she moved to amend her complaint so as to name Duke Power and B & D Contractors as codefendants, alleging for the first time that those parties were "liable to plaintiff jointly, severally, and in solido with each other and defendant, Pitman." Leave to file the amended complaint was granted on December 12, 1990. Subsequently, on February 27, 1991, the case was transferred to the Asheville Division, because of a potential conflict of interest in Charlotte.
 
 
 6
 Although added as co-defendants in December 1990, neither Duke nor B & D was served by Janeau until March 25, 1991, again without explanation for the delay. In their responsive pleadings filed on April 16, 1991, Duke and B & D raised the issue of absence of diversity jurisdiction and Janeau's incapacity to sue because of her failure to qualify properly under North Carolina law as a personal representative of her son's estate. On June 3, 1991, Pitman moved to dismiss the suit on the latter ground.
 
 
 7
 On October 25, 1991, after considering oral arguments and voluminous briefs, the district court dismissed the case as to Duke and B & D for lack of diversity jurisdiction,* and afforded Janeau thirty days, or until November 27, within which to seek proper qualification as the personal representative of her son's estate and to inform the court of such qualification. The district court specifically stated in its opinion and order that Janeau's failure to qualify within thirty days would result in the dismissal of her claims against Pitman.
 
 
 8
 As of December 3, 1991, a date after which those thirty days had expired, the district court had received no notice that Janeau had qualified; therefore, upon Pitman's motion, it dismissed the instant case for failure to comply with an order of the court in a timely fashion. Eight days later, Janeau filed a motion for reconsideration, informing the court that she had indeed qualified as a personal representative prior to the November 27 deadline but had failed to notify the court of her qualification. The district court rescinded its order of dismissal on December 19, 1991, but repeated its warning of dismissal and other sanctions for further transgressions by counsel, and permitted the case to go forward upon filing of an amended complaint.
 
 
 9
 Janeau filed her third amended complaint on December 30, 1991. Pitman filed a motion for scheduling order on February 19, 1992, which the trial court later granted when Janeau failed to respond. Janeau never notified the trial court of any objections to or difficulties with the discovery schedule or proposed an alternative schedule. Janeau neither disclosed any witnesses-fact or expert-nor provided Pitman with expert reports by April 15, 1992, as required by the scheduling order. Accordingly, on April 21, 1992, Pitman filed a motion to dismiss or alternatively to exclude expert testimony. Janeau did not respond. On May 7, 1992, the trial court dismissed the action with prejudice under Fed. R. Civ. P. 16(f), 37(b), and 41(b). The trial court stated that the dismissal was based on the failure by Janeau's counsel either to comply with the scheduling order, to make or cooperate in discovery, to prosecute the action, or to comply with any order.
 
 
 10
 For the first time since filing her third amended complaint in December 1991, Janeau communicated with the district court on May 22, 1992, when she filed a motion for reconsideration of the May 7, 1992 dismissal. Because Janeau's motion was filed within ten days of the entry of judgment, the trial court treated it as a motion to alter or amend a judgment under Fed. R. Civ. P. 59(e). The trial court denied Janeau's motion for reconsideration for the following reasons:
 
 
 11
 (1) There were at least two flagrant violations of the pretrial order by plaintiff, two violations of other orders entered by the trial court, six months of unexplained delay in moving to add Duke and B & D as co-defendants, nearly four months of unexplained delay in serving Duke and B & D, eight months of delay resulting from Janeau's lack of capacity to sue, and two dismissals.
 
 
 12
 (2) Janeau never offered any explanation for her failure to respond to Pitman's motions of December 2, 1991, February 19, 1992, and April 21, 1992; to comply with the trial court's orders of October 25, 1991, and March 3, 1992; or to meet the April 15, 1992, discovery deadline.
 
 
 13
 (3) No depositions had been taken from at least December 1990 to February 1992.
 
 
 14
 (4) Janeau had yet to name any proposed expert witness or to identify any alleged defect in Pitman's crane.
 
 
 15
 In summation, the district court concluded that the case was "no closer to trial readiness now than it was on the day the initial complaint was filed." Accordingly, the district court affirmed its earlier dismissal with prejudice. The district judge believed that less drastic sanctions would be
 
 
 16
 grossly inadequate and inappropriate in light of the lackadaisical prosecution of the instant case ... Any perpetuation of the case would merely compound the prejudice already suffered by Defendant, in that Defendant would still be required to prepare a defense against some illusory allegation of negligence that two and one-half years of procedural antics and discovery shenanigans have failed to resolve ... One would be hard pressed to argue that a less drastic sanction would be appropriate where the ultimate sanction of dismissal has already failed.
 
 
 17
 We review the district court's dismissal pursuant to Fed. R. Civ. P. 41(b) for an abuse of discretion. See Davis v. Williams, 588 F.2d 69, 70 (4th Cir. 1978); see also Herbert v. Saffell, 877 F.2d 267 (4th Cir. 1989). Specifically, we examine the lower court's ruling to see whether the district judge appropriately considered the four factors which govern a Fed. R. Civ. P. 41(b) dismissal:
 
 
 18
 (1) the degree of personal responsibility of the plaintiff, (2) the amount of prejudice caused the defendant, (3) the existence of a "drawn out history of deliberately proceeding in a dilatory fashion", and (4) the existence of sanctions less drastic than dismissal.
 
 
 19
 Chandler Leasing Corporation v. Lopez, 669 F.2d 919, 920 (4th Cir. 1982) (quoting Davis, 588 F.2d at 70); accord Herbert, 877 F.2d at 270.
 
 
 20
 The district court thoroughly appraised each of the factors, finding only the first factor-personal responsibility of the plaintiff-in doubt. We find that the district court properly concluded that prejudice to the defendant, Pitman, is significant as evidenced by the fact that it repeatedly has been forced to file motions based on the failure of plaintiff to respond to court orders.
 
 
 21
 Moreover, the record reveals an obvious pattern of deliberate dilatory action on the part of Janeau's attorneys. Over the course of the two and one-half years since she filed suit against Pitman, Janeau has taken little action to prosecute her claim or to respond to court orders and defense requests. Her claim against Pitman has been dismissed twice due to her counsel's failure to respond to court orders and to reply to defense motions. Finally, no lesser sanction would seem effective in the present case; indeed, Janeau was undeterred by an earlier dismissal.
 
 
 22
 While dismissal with prejudice is a "harsh sanction which should not be invoked lightly," Davis, 588 F.2d at 70, it properly was invoked in the present case. Therefore, the district court's order dismissing with prejudice Janeau's claims against Pitman is AFFIRMED.
 
 
 
 *
 The only basis for the district court's jurisdiction in the present case was complete diversity of citizenship between the plaintiff and the defendants, as provided for in 28 U.S.C. § 1332. Under the 1988 amendments to § 1332, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). The new provision applies to any civil action commenced in or removed to a United States District Court after May 18, 1989. Since Janeau's suit was removed to federal court on January 4, 1990, the 1988 amendments are controlling. Accordingly, she was deemed to be, in her capacity as administratrix, a citizen of North Carolina and was not in diversity of citizenship with Duke or B & D, both North Carolina corporations