Tammy THOMAS, Administrator and Personal Representative of the Estate of James D. Thomas, Plaintiff,

v.

BROOKS RUN MINING COMPANY, LLC, a Limited Liability Corporation, organized under the laws of the State of Delaware, authorized to do business in the State of West Virginia, and Richard F. Baugh, individually, Defendants.

Civil Action No. 1:07–00310.

United States District Court, S.D. West Virginia, at Bluefield.

Aug. 15, 2007.

Deborah L. McHenry, Mark R. Staun, Scott S. Segal, The Segal Law Firm, Charleston, WV, Jerome J. McFadden, Law Offices of Jerome J. McFadden, Princeton, WV, for Plaintiff.

Christopher D. Pence, Pamela D. Tarr, Jackson Kelly, Charleston, WV, for Defendants.

### *MEMORANDUM OPINION AND REMAND ORDER*

DAVID A. FABER, District Judge.

Pending before this court are plaintiff's motion to remand (Doc. No. 7) and defendants' motion to dismiss (Doc. No. 4). Having reviewed the record and applicable law, for the reasons outlined below, the court (1) **GRANTS** plaintiff's motion to remand (Doc. No. 7), (2) **REMANDS** this case to the Circuit Court of McDowell County, West Virginia, (3) **DIRECTS** the Clerk to send a certified copy of this Memorandum Opinion and Remand Order to the Clerk of the Circuit Court of McDowell County, West Virginia, and (4) **DIRECTS** the Clerk to remove this action from the court's active docket. Because the court finds that it lacks jurisdiction, the court does not reach defendants' motion to dismiss.

### I. Factual and Procedural Background

This case involves a deliberate intention wrongful death claim brought pursuant to section 23-4-2 of the West Virginia Code by a widow against her deceased husband's employer, defendant Brooks Run Mining Company, LLC ("Brooks"), and one of defendant Brooks's section foremen, defendant Richard Baugh.[1] According to plaintiff, her deceased husband was employed as an underground coal miner by defendant Brooks when he was killed on the job on January 13, 2007. (Doc. No. 8 at 4–5.) On the day of the accident, the decedent was working under the supervision of defendant Baugh. (*Id.* at 5.) Plaintiff alleges that defendants caused the accident by knowingly failing to heed defendant Brooks's own safety standards, as well as various state statutes and regulations and other comparable mining industry safety standards. (*Id.* at 5–6.)

Plaintiff originally brought her suit in the Circuit Court of McDowell County, West Virginia, but defendants removed it to federal court on May 16, 2007. Defendants claim that this court has jurisdiction under 28 U.S.C. § 1332, because there is

---

1. The West Virginia Workers' Compensation Act gives covered employers immunity from employee suits for "damages at common law or by statute" arising from work-related injuries. *Arthur v. E.I. DuPont de Nemours & Co.*, 58 F.3d 121, 123 (4th Cir.1995) (quoting W. Va.Code § 23-2-6). However, this immunity is lost if an employer acts with "deliberate intention" to injure an employee. *Id.* (quoting § 23-4-2(c)(2)). Section 23-4-2 does not grant a new or hybrid cause of action, *Parsons v. Shoney's, Inc.*, 580 F.Supp. 129, 131 (S.D.W.Va.1983) (Haden, C.J.), but merely preserves any cause of action for damages the employee, the widow, widower, child, or dependent of the employee may otherwise have against the employer. W.Va.Code § 23-4-2(c).

diversity of citizenship and the amount in controversy exceeds $75,000.00. (Doc. No. 1 at 7.) Plaintiff filed her motion to remand on May 30, 2007. (Doc. No. 7.)

It is undisputed that defendant Brooks is a citizen of Delaware and Virginia. (Doc. No. 1 at 5; Doc. No. 8 at 4.) Prior to his death, plaintiff's husband was a citizen of Virginia. (Doc. No. 1 at 3; Doc. No. 8 at 4.) Defendants assert that plaintiff is a citizen of West Virginia. (Doc. No. 1 at 3.) While plaintiff admits that she resides in Mercer County, West Virginia, she maintains that as the administratrix of her husband's estate, she is deemed to be a citizen of Virginia for the purposes of this litigation. (Doc. No. 8 at 4.)

Plaintiff further argues that even if she were considered a citizen of West Virginia, the court would still have no jurisdiction over this matter because defendant Richard Baugh is a citizen of West Virginia. (*Id.* at 13.) Defendants acknowledge that defendant Baugh is a citizen of West Virginia, but state that he was fraudulently joined in order to destroy diversity jurisdiction. (Doc. No. 1 at 5.) According to defendants, plaintiff cannot, as a matter of law, bring a claim against defendant Baugh under section 23–4–2 of the West Virginia Code. (*Id.*)

## II. Discussion

▮ The sole issue raised by plaintiff's motion to remand is whether defendants have demonstrated that there is complete diversity pursuant to 28 U.S.C. § 1332. Section 1332(a) provides that

district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between—

(1) citizens of different States;

(2) citizens of a State and citizens or subjects of a foreign state;

(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

(4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

This statute has long been construed to require complete diversity—that is, district courts shall only have jurisdiction where the citizenship of each plaintiff is diverse from that of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996) (citing *Strawbridge v. Curtiss*, 3 Cranch 267, 7 U.S. 267, 2 L.Ed. 435 (1806)).

▮ The burden of establishing federal jurisdiction is upon the party seeking removal. *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir.1994) (citation omitted). Removal jurisdiction is strictly construed, and, if federal jurisdiction is in doubt, remand is necessary. *Id.* (citations omitted).

### A. Plaintiff's Citizenship

28 U.S.C. § 1332(c)(2) provides that the "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent. . . ." Congress added § 1332(c)(2) to the diversity statute as part of the Judicial Improvements and Access to Justice Act of 1988, whose purpose was to ease the caseload of federal courts by reducing the scope of diversity jurisdiction. *Tank v. Chronister*, 160 F.3d 597, 599 (10th Cir. 1998) (citing H.R.Rep. No. 100–889 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5982); Heather N. Hormel, Comment, *Domicile for the Dead: Diversity Jurisdiction in Wrongful Death Actions*, 2001 U. Chi. Legal F. 519, 519–20 (2001). Section 1332(c)(2) is based on a 1969 proposal of the American Law Institute ("ALI"), which provides that

[a]n executor, administrator, or any person representing the estate of a decedent or appointed pursuant to statute with authority to bring an action for wrongful death is deemed to be a citizen only of the same state as the decedent.... The purpose is to prevent either the creation or destruction of diversity jurisdiction by the appointment of a representative of different citizenship from that of the decedent or person represented.

*Tank,* 160 F.3d at 599 (quoting Am. Law Inst., *Study of the Division of Jurisdiction Between State and Federal Courts,* § 1301(b)(4) (1969), *reprinted in* Richard H. Field, *Jurisdiction of Federal Courts,* 46 F.R.D. 141, 143 (1969)).

The Tenth and Eighth Circuits have found that because Congress omitted the language from the ALI proposal that refers to executors, administrators, and representatives appointed under wrongful death statutes, it intended § 1332(c)(2) to be more narrow than the ALI proposal. *Steinlage ex rel Smith v. Mayo Clinic Rochester,* 435 F.3d 913, 918 (8th Cir. 2006); *Tank,* 160 F.3d at 599–600. According to these courts, § 1332(c)(2) excludes from its coverage even those who are "appointed pursuant to statute with authority to bring an action for wrongful death," if the estate does not stand to benefit from the suit. *Tank,* 160 F.3d at 599 (quoting Am. Law Inst., *supra); accord Steinlage,* 435 F.3d at 919–20. In reaching this conclusion, the court in *Tank* contrasted Kansas's wrongful death statute with its survival statute, pursuant to which the decedent's estate recovers. 160 F.3d at 599 ("A survival action may be brought only by the estate administrator pursuant to Kan. Stat. Ann. § 60–1901, and only for the purpose of recovering damages suffered by the decedent prior to death.... In contrast, a wrongful death action may be brought only by the dece-

dent's heirs-at-law pursuant to Kan. Stat. Ann. § 60–1902, and only for their 'exclusive benefit' for damages suffered by them as a result of the wrongful death.") The court in *Steinlage* reached the same conclusion even though, under Minnesota law, personal injury causes of action die with the injured person and can only be revived as a wrongful death action. 435 F.3d at 915 (discussing Minn.Stat. Ann. § 573.01).

In applying § 1332(c)(2), several district courts have also looked to whether the decedent's estate benefits under the applicable wrongful death statute. *See Vaka v. Embraer–Empresa Brasileira De Aeronautica, S.A.,* 303 F.Supp.2d 1333, 1334–35 (S.D.Fla.2003) (holding that the citizenship of the decedent was controlling, because "under Florida law, only a decedent's personal representative may bring survival and wrongful death claims" and "the decedent's estate may recover in a wrongful death claim"); *Winn v. Panola–Harrison Elec. Co–op., Inc.,* 966 F.Supp. 481, 483 (E.D.Tex.1997) (finding that the decedent's citizenship in wrongful death suits is not controlling, because under Texas law, wrongful death actions are for the benefit of "the surviving spouse, children, and parents of the deceased," whereas the survival statute creates a cause of action "in favor of the heirs, legal representatives, and estate of the injured person").

Without addressing the issue of whether Congress intended § 1332(c)(2) to be narrower than the ALI proposal, the Seventh Circuit has also held that the citizenship of the decedent is not controlling under § 1332(c)(2) in cases brought pursuant to Louisiana's wrongful death statute. *Milam v. State Farm Mut. Auto. Ins. Co.,* 972 F.2d 166 (7th Cir.1992). Finding that "Louisiana apparently does not regard a decedent's estate as an entity on behalf of which a lawsuit can be brought," the court

concluded that the plaintiff "brought this suit not as the legal representative of her husband's estate but in her own behalf and as the guardian of her children." *Id.* at 168. The court noted, however, that this was "an oddity of Louisiana law." *Id.*

At least one court has taken a different approach, finding instead that the difference in wording between the ALI proposal and § 1332(c)(2) merely reflects an editorial choice, rather than Congressional intent to adopt a narrower version of the ALI proposal. *See James v. Three Notch Med. Ctr.*, 966 F.Supp. 1112, 1115 (M.D.Ala. 1997). The court based its conclusion on the fact that the House Report submitted with the bill makes no reference to the change in wording and includes only general statements of purpose about the need to limit diversity jurisdiction. *Id.* (citing H.R.Rep. No. 100–889, *reprinted in* 1988 U.S.C.C.A.N. 5982). Based upon this interpretation of the statute, the court in *James* disregarded the fact that the decedent's estate did not stand to benefit from the wrongful death suit, reasoning "that § 1332(c)(2) focuses on the nature of the representative capacity of the person bringing the action, and not on whether that position is being exercised for the benefit of the decedent's estate." *Id.* at 1116. Thus, the court held that the citizenship of the decedent was controlling, because the "personal representative" who brings the wrongful death claim under Alabama law is defined as "the executor or executrix of the decedent's will or the administrator or administratrix of an intestate's estate." *Id.*

The Fourth Circuit has not yet ruled on this issue, but its dicta in two cases indicates that it would follow the approach in *James,* rather than that of the Tenth and

Eighth Circuits. First, in *Myles v. Laffitte,* an unpublished, per curiam opinion, the court framed the question as "whether, for diversity purposes, citizenship should be determined in a suit brought by a personal representative (executor or executrix, administrator or administratrix) by reference to that of the decedent or to that of the personal representative." No. 90–2004, 1990 WL 123861, at *1 (4th Cir. Aug. 28, 1990). Citing the then-recently passed 28 U.S.C. § 1332(c)(2), as well as the ALI proposal, the Fourth Circuit concluded that in the future, the decedent's citizenship would be controlling. *Id.* However, because the wrongful death case before the court in *Myles* was filed before § 1332(c)(2) went into effect, the court applied the pre-existing rule. *Id.* The opinion does not hint at the possibility that federal courts should distinguish between suits that permit the decedent's estate to recover and those that do not.

In *Janeau v. Pitman Manufacturing Co.,* another unpublished, per curiam opinion, the Fourth Circuit matter-of-factly noted that the district court had jurisdiction over the matter, a wrongful death case, because the plaintiff, as administratrix, was deemed to be a citizen of the state of the decedent. No. 92–1923, 1993 WL 280354, at *4 n. * (4th Cir. July 27, 1993). It did not, however, directly address the issue of how § 1332(c)(2) should be applied. Nonetheless, two district courts in this Circuit have cited *Janeau* in support of their holding that the citizenship of the decedent is controlling in wrongful death suits brought by the decedent's personal representative or the administrator of the estate. *See Brumfield v. Farley,* 243 F.Supp.2d 574, 575 (S.D.W.Va.2002) (Haden, C.J.);[2] *Kimzey*

---

**2.** *Brumfield* applied 28 U.S.C. § 1332(c)(2) to a wrongful death case brought pursuant to section 55–7–5 of the West Virginia Code.

243 F.Supp.2d at 576. As in this case, the removing party argued that because the estate has no right of recovery under West Virginia's

*v. Cuento*, No. 1:98CV203, 1999 WL 33320923, at *2 (W.D.N.C. March 10, 1999) ("[T]he law in this Circuit is clear: the deceased, not the beneficiary of the deceased or their estate, is the party that must be diverse under § 1332(c)(2).").

Defendants urge this court to follow the line of reasoning in *Steinlage* and *Winn* and find that plaintiff does not really represent her husband's estate in this matter, because deliberate intention wrongful death suits brought pursuant to section 23–4–2 of the West Virginia Code do not benefit the decedent's estate. (Doc. No. 11 at 8.) Rather, they assert, such suits can only benefit the widow, widower, child, or dependant of the decedent. W. Va. Code § 23–4–2(c); *Savilla v. Speedway Superamerica, LLC*, 219 W.Va. 758, 639 S.E.2d 850 (2006).[3] Defendants try to distinguish this case from *Brumfield* by arguing that the estate *may* benefit from "traditional" wrongful death suits brought

wrongful death statute and the personal representative serves only as a trustee for the heirs, the citizenship of the personal representative should be controlling. *(Brumfield v. Farley*, No. 5:02–cv–1151, Doc. No. 9 at 6.) Stating that the question of domicile is a question of federal law, the court declined to consider the defendant's argument that, under West Virginia law, the plaintiff in a wrongful death action is not the legal representative of the estate. *Brumfield*, 243 F.Supp.2d at 575.

3. *Savilla* involved a deliberate intention suit brought by the decedent's sister, who had been appointed administratrix of her estate. The Court held that

[a] personal representative who is not one of the statutorily-named beneficiaries of a deliberate intention cause of action authorized by W.Va.Code, 23–4–2(c) [2005] has standing to assert a deliberate intention claim against a decedent's employer *on behalf of* a person who has such a cause of action in a wrongful death suit filed pursuant to W.Va.Code, 55–7–6 [1992].

*Savilla*, 219 W.Va. 758, 639 S.E.2d 850, at syl. pt. 2 (emphasis added).

pursuant to section 55–7–5 of the West Virginia Code, if there are no living beneficiaries. (Doc. No. 11 at 7) (citing W.Va. Code § 55–7–6(b)). However, a plain reading of section 55–7–6(b) indicates *not* that the recovery is paid to the estate in the absence of any surviving beneficiaries, but that it is merely distributed in accordance with the will or the laws of intestacy. *See also McClure v. McClure*, 184 W.Va. 649, 403 S.E.2d 197, at syl. pt. 4 (1991) ("[A]ny recovery passes to the beneficiaries designated in the wrongful death statute and not to the decedent's estate.").[4] Thus, the court cannot distinguish this case from *Brumfield* on the basis that it involves a deliberate intention wrongful death suit and *Brumfield* involved a "traditional" wrongful death suit.

■ In this case, the decedent is a citizen of Virginia, while plaintiff, the decedent's personal representative and one of the purported beneficiaries under section

4. In *McDavid v. United States*, 213 W.Va. 592, 584 S.E.2d 226, 234–35 (2003), the West Virginia Supreme Court of Appeals noted that, when awarding damages in wrongful death suits, juries must now consider losses to both the beneficiaries and the estate. Specifically, juries now consider medical and funeral expenses in calculating their damage award. *Id.* (citing W.Va.Code § 55–7–6(c)). However, any amount recovered for such expenses is not paid into the estate, but "shall be so expended by the personal representative." W.Va.Code § 55–7–6(c)(2); *see also Steinlage*, 435 F.3d at 915 (finding that the estate does not benefit from a wrongful death damage award, although the award may include funeral expenses and expenses related to support of the decedent prior to death). Furthermore, it appears that such expenses would also be recoverable in a deliberate intention wrongful death case, because *Savilla* indicates only that the class of beneficiaries (section 55–7–6(b)) differs in deliberate intention wrongful death suits, not the damages that are recoverable (section 55–7–6(c)).

23–4–2(c) of the West Virginia Code, is a citizen of West Virginia. Thus, applying *Brumfield* and the scant other cases from this Circuit, the court must hold that the parties are not diverse, since plaintiff is deemed to be a citizen of Virginia for the purposes of this litigation and defendant Brooks is also a citizen of Virginia. As defendants point out, the decedent's estate does not stand to benefit from this deliberate intention wrongful death suit. For two reasons, however, this court declines to apply those cases that have held that the decedent's citizenship controls only when the estate benefits.

First, the cases in this Circuit that have discussed 28 U.S.C. § 1332(c)(2) have, like *James,* focused on the representative capacity of the person bringing the action, rather than on whether the action was brought for the benefit of the decedent's estate. *See Myles,* 1990 WL 123861, at *1 (stating that the question is whether the decedent's citizenship controls or that of the personal representative, namely the "executor or executrix, administrator or administratrix"); *Janeau,* 1993 WL 280354, at *4 n. * (concluding that, as administratrix, the plaintiff was the legal representative of the estate for purposes of § 1332(c)(2)); *Brumfield,* 243 F.Supp.2d at 576 n. 1 (noting that West Virginia wrongful death suits must be brought by the personal representative of the decedent and declining to consider defendant's argument that the estate has no right of recovery).

■ Under West Virginia law, both traditional *and* deliberate intention wrongful death suits must be brought by the personal representative duly appointed to represent the decedent, rather than by the statutory beneficiaries. W.Va.Code § 55–7–6(a); *Savilla,* 639 S.E.2d at 855–56. Although the term "personal representative" is not defined by the statute, it appears that the personal representative must generally be the administrator of the estate appointed by the appropriate County Commission. *See* W.Va.Code § 55–7–6(a); *Richardson v. Kennedy, M.D.,* 197 W.Va. 326, 475 S.E.2d 418, 423–26 (1996); *see also McClure,* 403 S.E.2d at 202; *Perry v. New River & Pocahontas Consol. Coal Co.,* 74 W.Va. 122, 81 S.E. 844, 844 (1914) ("None other than an administrator can maintain this statutory action for damages for wrongful death."). Thus, the personal representative who brings a West Virginia wrongful death suit is the legal representative of the decedent's estate, even though the suit is brought on behalf of the statutory beneficiaries and not the estate. Applying the plain meaning of 28 U.S.C. § 1332(c)(2), the personal representative of the decedent in a West Virginia wrongful death suit must therefore be deemed to be a citizen of the same state as the decedent.

It is noteworthy that the West Virginia wrongful death statute differs in this regard from that of Kansas, for example, where wrongful death suits must be brought by the decedent's heirs-at-law, who are also the beneficiaries of any recovery. *Tank,* 160 F.3d at 599; *see also Steinlage,* 435 F.3d at 916 ("In Minnesota, a statutory wrongful death trustee [the person appointed to bring a wrongful death claim] is not a personal representative of the decedent."); *Milam,* 972 F.2d at 168 ("[Plaintiff] brought this suit not as the legal representative of her husband's estate but in her own behalf and as the guardian of her children."). It is more akin to the wrongful death statute at issue in *James,* which requires the appointment of a personal representative, who is not necessarily one of the statutory beneficiaries, to represent the estate in a wrongful death action. *See James,* 966 F.Supp. at 1116; *see also Liu v. Westchester County Medical Center,* 837 F.Supp. 82, 83

(S.D.N.Y.1993) ("Wrongful death actions are brought by fiduciary nominal plaintiffs seeking to recompense beneficiaries . . . of the decedent. Nominal plaintiffs bringing wrongful death suits are thus 'representatives' of an 'estate' of the decedent. . . ."). Because the personal representative in a West Virginia wrongful death suit does not need to be a beneficiary of the suit, it would be easy to manufacture diversity by appointing a personal representative from a different state than the decedent and defendant. By contrast, the citizenship of the decedent is a non-manipulable fact.

■ Second, West Virginia has only a "limited form of survival statute," *McDavid*, 584 S.E.2d at 236, which provides that

[w]here an action is brought by a person injured for damage caused by the wrongful act, neglect or default of any person or corporation, and the person injured dies as a result thereof, the action shall not abate by reason of his or her death but, his or her death being suggested, it may be revived in the name of his or her personal representative, and the complaint shall be amended so as to conform to an action under sections five and six of this article [the wrongful death statute], and the case proceeded with as if the action had been brought under said sections. *Additionally a separate and distinct cause of action may be brought, and if brought, shall be joined in the same proceeding for damages incurred between the time of injury and death where not otherwise provided for in said sections five and six.* In either case there shall be but one recovery for each element of damages. . . .

W.Va.Code § 55–7–8 (emphasis added). Thus, where a decedent institutes a personal injury suit before dying of his injuries, the suit is revived after his death as a wrongful death suit. In conjunction with that wrongful death suit, the decedent's personal representative can bring a separate and distinct cause of action for damages incurred by the decedent between the time of the injury and death that are not provided for in the wrongful death statute. *See Estate of Helmick by Fox v. Martin*, 188 W.Va. 559, 425 S.E.2d 235, 239 (1992) (holding that damages for pain and suffering are recoverable pursuant to section 55–7–8).[5]

West Virginia's survival statute differs in this regard from the survival statutes at issue in *Tank* and *Winn*, which allow the personal representative of the decedent's estate to maintain a separate suit, not brought in conjunction with a wrongful death suit, to recover *all* damages suffered by the decedent prior to death. *Tank*, 160 F.3d at 599 (citing Kan. Stat. Ann § 60–1801 and *Mason v. Gerin Corp.*, 231 Kan. 718, 647 P.2d 1340, 1343 (1982)); *Winn*, 966 F.Supp. at 483 (citing Tex. Civ. Prac. & Rem.Code Ann. § 71.021); *but see Steinlage*, 435 F.3d at 914–15 (applying *Tank*, although Minnesota's statute is similar to West Virginia's, in that it provides that personal injury actions commenced before death are essentially converted into wrongful death actions).

Given the peculiarities of West Virginia's survival statute, applying *Steinlage*, *Tank*, and *Winn* to cases like the one before the court would essentially render 28 U.S.C. § 1332(c)(2) inapplicable to all West Virginia personal injury causes of action that

---

**5.** In *McDavid*, the West Virginia Supreme Court of Appeals recently held that damages for pain and suffering can be recovered pursuant to section 55–7–6 where the injury resulted in death, but the decedent did not institute an action for personal injury prior to death. 213 W.Va. 592, 584 S.E.2d 226, at syl. pt. 6. The dissent argued that this holding renders section 55–7–8 "completely meaningless." *Id.* at 240 (Maynard, J., dissenting).

result in death. Congress's purpose of easing the caseload of federal courts will be better served by applying the ordinary meaning of § 1332(c)(2) and holding that because plaintiff has brought her suit in her capacity as the decedent's personal representative (i.e., the administratrix or legal representative of his estate), she "shall be deemed to be a citizen only of the same State as the decedent." *See* § 1332(c)(2).

For the foregoing reasons, the court finds that federal jurisdiction over this matter is lacking and therefore grants plaintiff's motion to remand.

### B. Defendant Richard Baugh's Citizenship

Because the court grants plaintiff's motion to remand pursuant to 28 U.S.C. § 1332(c)(2), it will not address the issue of whether defendant Baugh was fraudulently joined in order to defeat diversity jurisdiction.

### III. Conclusion

For the aforementioned reasons, the court hereby **GRANTS** plaintiff's motion to remand (Doc. No. 7) and **REMANDS** this matter to the Circuit Court of McDowell County, West Virginia. Because the court finds that it lacks subject matter jurisdiction over this matter, the court does not reach defendants' motion to dismiss. (Doc. No. 4.)

The Clerk is **DIRECTED** to remove this matter from the court's active docket and to send certified copies of this Memorandum Opinion and Remand Order to counsel of record and the Clerk of the Court of the Circuit Court of McDowell County, West Virginia.