KERSTEN v DETROIT AUTOMOBILE INTER-INSURANCE
EXCHANGE

Docket No. 77-1593. Submitted February 8, 1978, at Grand Rapids.—
Decided April 11, 1978.

James Kersten and Beverly Kersten brought an action for a
declaratory judgment of liability under a policy of insurance
against the Detroit Automobile Inter-Insurance Exchange, the
Secretary of State, and others, in Kalamazoo County Circuit
Court, Robert L. Borsos, J., as a result of an accident which
occurred when a vehicle driven by Beverly Kersten struck a
tire and rim in the passing lane of the public highway on
which she was driving. Plaintiffs were granted a declaratory
judgment of liability. The court found that the tire and rim
assembly was a spare tire from an unidentified motor vehicle
and that physical contact with the tire and rim was sufficient
contact with the negligent vehicle under Michigan's then hit-
and-run statute to provide collision insurance coverage under
plaintiffs' insurance policy with the defendant Insurance Ex-
change. Defendant Detroit Automobile Inter-Insurance Ex-
change appeals. *Held:*

Plaintiffs' recovery was dependent upon physical contact by
the hit-and-run vehicle and plaintiffs' vehicle under the policy
of insurance and the then existing statute. A collision with a
tire and rim on a highway is not physical contact with a
vehicle because a tire and rim are not an automobile.

Recovery may be allowed where an intervening vehicle or an
object are propelled into an insured's automobile by a hit and

REFERENCES FOR POINTS IN HEADNOTES

[1, 3–9] 7 Am Jur 2d, Automobile Insurance §§ 135, 136.5.
Rights and liabilities under "uninsured motorists" coverage. 79
ALR2d 1252.
Uninsured motorist indorsement: validity and construction of re-
quirement that there be "physical contact" with unidentified or
hit-and-run vehicle. 25 ALR3d 1299.

[2, 3, 10] 5 Am Jur 2d, Appeal and Error §§ 819, 882.

[3, 7, 8, 10] 7 Am Jur 2d, Automobile Insurance § 136.7.
What constitutes "automobile" for purposes of uninsured motorist
provisions. 65 ALR3d 851.

run vehicle where there is convincing evidence of the hit-and-run vehicle and the possibility of fraud is minimal; but where an insured collides with a loose tire and rim on a highway the possibilities of fraud, in the absence of definite and specific proof of physical contact with an unidentified vehicle, are too great to conclude that recovery was intended under the hit-and-run provisions of the insurance policy.

Reversed.

Judge J. H. GILLIS, concurring, would also reverse on the ground that the trial court's findings of fact were based upon speculation and conjecture and were, therefore, erroneous.

OPINION OF THE COURT

1. INSURANCE—AUTOMOBILES—UNINSURED MOTORIST—HIT-AND-RUN —PHYSICAL CONTACT—DAMAGES—STATUTES.

Recovery for hit-and-run personal injury damages, prior to Michigan's no-fault insurance law, required physical contact by an unidentified vehicle with a plaintiff or with a vehicle occupied by the plaintiff under both uninsured motorist coverage and by statute; furthermore, the Secretary of State, as director of the uninsured motorist fund, could not be joined as a defendant for the purpose of payment from the fund unless physical contact with the unidentified vehicle had been established (MCLA 257.1112, 257.1133; MSA 9.2812, 9.2833).

2. APPEAL AND ERROR—FINDINGS OF FACT—CLEARLY ERRONEOUS FINDINGS.

A finding of fact made by a trial court will be set aside only if it is clearly erroneous; a finding of fact is clearly erroneous where, although there is some evidence to support it, a reviewing court which has examined all of the evidence is left with the definite and firm conviction that a mistake has been committed. 3. Appeal and Error—Automobiles—Tire and Rim— Physical Contact—Legal Conclusions—Rejection.

A trial court's legal conclusion that a collision with a loose tire and rim on a highway was physical contact with an automobile is rejected; a tire and rim on a highway are not an automobile. 4. Insurance—Automobiles—Phantom Vehicle Claims—Physical Contact—Prevention of Fraud.

The physical contact between vehicles provision in insurance policies issued prior to the no-fault insurance statute was designed to reduce the possibility of fraud in accidents involving a hit-and-run vehicle; the purpose of the language was to prevent phantom vehicle claims—the possibility that a motorist

who negligently lost control of his own vehicle would recover by alleging that an unknown vehicle caused him to lose control.

5. INSURANCE—AUTOMOBILES—HIT-AND-RUN—PHYSICAL CONTACT—
   INTERVENING VEHICLE—PREVENTION OF FRAUD.

   Courts permit recovery under an insured's hit-and-run coverage where the hit-and-run vehicle strikes a second or intervening vehicle which in turn is propelled into the insured vehicle; under these circumstances, there is physical contact, although indirect and transmitted, between the insured vehicle and the hit-and-run vehicle, and in this intervening vehicle situation the possibility of fraud is minimal.

6. INSURANCE—AUTOMOBILES—HIT-AND-RUN—PHYSICAL CONTACT—
   CAUSAL CONNECTION—TRANSMITTED FORCE—INTERMEDIATE VE-
   HICLES—PROPELLED OBJECT CASES.

   Recovery is permitted under an insured's hit-and-run coverage where the evidence discloses a direct causal connection between the hit-and-run vehicle and the plaintiff-insured's vehicle which was carried through by a continuous and contemporaneously transmitted force; in situations involving an intermediate vehicle or a propelled object there must be convincing evidence of a hit-and-run vehicle.

7. INSURANCE—AUTOMOBILES—HIT-AND-RUN—TIRE ON HIGHWAY—
   CHAIN OF EVENTS—OBJECTIVE AND INFERENTIAL EVIDENCE—
   SPECULATIVE CAUSATION.

   Recovery under an insured's hit-and-run coverage should be denied where the insured's vehicle strikes a tire and rim on a highway causing him to lose control where he is only able to raise an inference of a contemporaneous and continuing propulsion of the tire and rim from a disappearing hit-and-run vehicle; clearly definable or objective evidence rather than inferential evidence is necessary to show a beginning and ending of a contemporaneously occurring chain of events, and where nothing links the tire and rim with the hit-and-run vehicle except an inference drawn from the presence of a spinning tire and rim on the road, the chain of causation is stretched too thin and is too speculative.

8. INSURANCE—AUTOMOBILES—HIT-AND-RUN—PHANTOM VEHICLE—
   PHYSICAL CONTACT—FRAUD.

   The possibilities of fraud, in the absence of definite and specific proof of physical contact with an unidentified vehicle, are too great to allow insurance recovery for a collision with a loose

tire and rim left behind on a highway by a phantom vehicle under the hit-and-run provisions of an insurance policy.

9. Insurance—Automobiles—Hit-and-Run—Physical Contact—Absence of Fraud.

The statutory and policy mandates of physical contact between an insured and an unidentified hit-and-run vehicle cannot be ignored even where there is no claim of fraud.

Concurrence by J. H. Gillis, P. J.

10. Appeal and Error—Findings of Fact—Speculation and Conjecture—Clear Error.

A trial court's findings of fact are erroneous, based upon speculation and conjecture, and reversible where the court failed to explore all of the plausible explanations as to how a tire and rim came to be on a highway at the time they were struck by a plaintiff-insured's vehicle.

*Martell & Allen,* for plaintiffs.

*James, Dark, Craig & Brill,* for Detroit Automobile Inter-Insurance Exchange.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Joseph B. Bilitzke* and *Regina Ann King,* Assistants Attorney General, for Michigan Department of State.

Before: J. H. Gillis, P. J., and R. B. Burns and Allen, JJ.

Allen, J. Defendant Detroit Automobile Inter-Insurance Exchange (DAIIE), appeals from an April 13, 1977, declaratory judgment, GCR 1963, 521, holding that, under plaintiffs' insurance policy and under Michigan's then hit-and-run statute, MCLA 257.1112; MSA 9.2812,[1] DAIIE was liable to plaintiffs for damages arising out of an accident

[1] Repealed prospectively by MCLA 257.1133; MSA 9.2833, effective January 2, 1976.

occurring May 14, 1975, when the vehicle driven by Beverly Kersten struck an unidentified truck tire spinning in front of her on the passing lane of the highway on which she was driving. At the bench trial the issue was whether the unusual circumstances of this case entitled plaintiffs to insurance benefits under pre-no-fault law.

## I. FACTS

The insurance policy plaintiffs carried with DAIIE provided for protection in the event of an accident with an uninsured automobile if plaintiffs' injuries were caused by the ownership, maintenance or use of said uninsured automobile. Uninsured automobile was defined to include a "hit-run" motor vehicle. And a "hit-run" motor vehicle was defined, *inter alia,* as "a motor vehicle which causes bodily injury to an insured *arising out of physical contact* of such vehicle with the insured or with a vehicle which the insured is occupying at the time of the accident * * * ".

At the time of the accident, insurers in this state were required to make uninsured motorist coverage available, MCLA 500.3010; MSA 24.13010.[2] Also in existence at the time of the accident was a motor vehicle accident claims fund created by the Motor Vehicle Accident Claims Act. MCLA 257.1101 *et seq.;* MSA 9.2801 *et seq.* Section 12 of that act provided for hit-and-run coverage:

"Where the death of or personal injury to any person is occasioned in this state by a motor vehicle but the identity of the motor vehicle and of the driver and owner thereof cannot be established, any person who would have a cause of action against the owner or

---

[2] After the institution of the no-fault automobile insurance scheme, this statute was repealed. 1972 PA 345.

driver in respect to the death or personal injury may bring an action against the secretary * * * . In any action commenced under this section, *physical contact by the unidentified vehicle with the plaintiff or with a vehicle occupied by the plaintiff,* is a condition precedent to such action." MCLA 257.1112; MSA 9.2812. (Emphasis supplied.)

Section 13 of the act precluded joining the Secretary of State, the director of the fund, "unless physical contact by the unidentified vehicle with the plaintiff or with the vehicle occupied by the plaintiff or with such other vehicle which was involved in the accident has been established". MCLA 257.1113; MSA 9.2813. The physical contact requirement was added to both sections in 1968. 1968 PA 223. Thus, both under the policy of insurance and by statute, plaintiffs' recovery was dependent upon "physical contact" by the hit-and-run vehicle and plaintiffs' car.

Sometime between 10 p.m. and 11 p.m., on May 14, 1973, Beverly Kersten was injured when the automobile she was operating went out of control after striking a truck tire and rim assembly. The tire was in the middle of the passing lane on northbound US-131, a limited access expressway near Kalamazoo. Kersten had just passed another car when she saw an object in the road ahead of her. She applied her brakes but could not avoid the object. Just before hitting the object she recognized it as a large tire which was on its side and spinning in the same fashion as a coin just before it comes to rest. Around noon of the same day, a truck carrying a load of scrap tires spilled a number of tires on the highway in the area of the Kersten accident. Moments after the Kersten accident, a car driven by witness Marilyn VanKampen

hit a truck tire lying in the passing lane of the same stretch of highway.[3]

The tire and rim assembly which Kersten hit was retrieved. There was a large gash in the tire, apparently from the collision. Appellant's expert testified that the tire probably could have held air prior to the accident. The tire was quite old, had virtually no tread, and the inner fabric was exposed in places. Appellant's expert described it as "not even a good carcass", and stated that it could have been a junk or scrap tire. However, on cross-examination, the expert also admitted that the tire could have been driven a short distance and could possibly have been used as a spare tire. The expert further testified that the tire and rim had definitely not worked loose from the axle of a moving vehicle.

## II. ISSUES AND TRIAL COURT'S FINDINGS

The trial judge recognized that the "physical contact" requirement was the basic issue in the case and made findings of fact and conclusions of law which fully satisfied the physical contact re-

[3] The record contains statements from witnesses Cook, VanKampen, Anderson and Niedzielski. Cook stated that on the night in question he was driving north on the highway when he saw a large tire lying in the passing lane, that after he passed the tire he looked in his rearview mirror and observed the car behind him strike the tire, become airborne, but pull to a stop on the right side of the highway. Cook then drove his car back to the scene of the impact where he found Marilyn VanKampen sitting in her car in a dazed condition. Marilyn VanKampen stated that on the date and time in question she was driving north on highway 131 when she struck a large tire, became airborne but managed to pull her car off the right side of the road. Witnesses Anderson and Niedzielski lived in separate apartments near the scene of the Kersten-VanKampen accidents. Each heard a large crash and "a few seconds later" another crash. Each proceeded to the scene of the noise where each saw two vehicles, one on highway 131 and one which had plunged over the overpass. Both Anderson and Niedzielski were positive that the Kersten accident occurred first.

quirement. It is the legal adequacy of the trial court's findings of both fact and law upon which our resolution of this case turns.

We summarize the court's findings as follows: First, the tire and rim assembly which caused the accident was a spare tire mounted on or under the trailer of a passing truck from which it fell, rolling into the path of plaintiffs' vehicle.[4] The court stated that while it was not unusual to see a truck full of old tires being transported to the junk yard, the facts in the case "do not show that this tire and rim came from a load of junk tires". Second, under the rationale in *Lord v Auto-Owners Insurance Co*, 22 Mich App 669; 177 NW2d 653 (1970), physical contact with the total (as distinguished from only a part) of the hit-run vehicle is not required. Since no fraud was shown or alleged in the instant case, *Lord* may be extended to include a situation where an object has fallen off an unidentified vehicle and has struck plaintiffs' car.[5] Third, even if direct physical contact is required, such condition has been fulfilled in the instant case because the tire and rim assembly is a motor vehicle.[6]

---

[4] "3. The tire and rim assembly was a 'spare tire' mounted on or under and dropped from or escaped from an unidentified motor vehicle a short time before such assembly collided with plaintiffs' motor vehicle." Judge's Finding of Fact, Declaratory Judgment.

[5] "2a. The 'physical *contact*' provision *of both the statute* and the policy does not require *direct* physical contact with the negligent vehicle in this case because there has been no fraud nor contributory negligence either pleaded or proved." Judge's Conclusion of Law, Declaratory Judgment.

[6] "2b. That even were the Court to hold that the 'direct physical contact' requirements apply here, such *provisions have been fulfilled*. Under the circumstances of this case, the tire and rim assembly is a 'vehicle' and/or 'motor vehicle,' as those terms are used in the policy and statute for the reason that this Court has found that the tire and rim had shortly before the accident been an integral part of a motor vehicle and not just a part of the cargo carried by a motor vehicle." *Judge's Conclusion of Law, Declaratory Judgment.*

## III. Legal sufficiency of the trial court's findings of fact

We first consider whether the trial court's findings of fact are supported by the evidence. From the facts related in the various depositions and statements, five possible scenarios emerge as to how the tire and rim assembly happened to be on the highway in front of the Kersten car.[7] The trial judge chose possibility five. Unfortunately, the bulk of the record is contained in depositions and statements with trial testimony taken from only a single witness. Thus, the trial judge was disadvantaged in having to make findings of fact based upon an unusually scanty record and without the benefit of cross-examination from the key witnesses involved. But based upon the record available to him, situation five is as supportable as any of the other possibilities. The fact that the tire was spinning—this testimony being unrefuted—suggests that the tire had recently dropped off an unidentified vehicle and was not a part of the load of tires which had spilled on the highway some ten hours earlier. The fact that the accident occurred

---

[7] First, the tire may have been dropped at noon on US 131 after a truck lost part of its load of junk tires. Sunset on the evening of the accident was at 8:55 p.m. The weather was clear; visibility was unlimited. Perhaps the daylight motorists between noon and nightfall were able to avoid the tire and rim. But plaintiff, who approached the tire after 10 p.m., did not spot the tire because of the darkness.

Second, that the tire was pushed on the highway by pranksters.

Third, that the tire and rim, part of a load of junk tires, had recently fallen off a truck preceding plaintiffs' vehicle. In support of this theory is the fact that the tire was in very bad shape, according to the tire expert.

Fourth, the same as three above, but that the tire had been dropped sometime before plaintiff approached. In conflict with this theory is plaintiff's testimony that the tire was spinning like a coin.

Fifth, the situation may have been as in possibility three above, except that the tire was a spare and not a junk tire. In support of this theory is the presence of the tire rim and the testimony that the tire could hold air.

on a limited access highway which was completely fenced on both sides and where pedestrians or non-motorized vehicles are rarely found, suggests that the tire was not rolled onto the highway by children or pranksters. The fact that the tire expert witness, called by the Secretary of State, admitted that the tire "could have been a spare" and that such tires sometimes escape from a truck or trailer supports the trial court's finding that the tire was a spare. The fact that the tire included a rim also gives some support to the trial court's findings of fact.

A finding of fact made by a trial court will be set aside only if it is clearly erroneous. *Michigan Sugar Co v Jebavy-Sorenson Orchard Co,* 66 Mich App 642, 644; 239 NW2d 693 (1976), *Muskegon v Lipman Investment Corp,* 66 Mich App 378, 383; 239 NW2d 375 (1976). A finding of fact is clearly erroneous where, although there is some evidence to support it, a reviewing court which has examined all of the evidence is left with the definite and firm conviction that a mistake has been committed. *Tuttle v Department of State Highways,* 397 Mich 44, 46; 243 NW2d 244 (1976), *BPA II v Harrison Township,* 73 Mich App 731, 736; 252 NW2d 546 (1977). 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), Rule 517, p 596. We therefore conclude that while the evidence is regretfully thin and subject to other interpretations it is not clearly erroneous.

## IV. Trial court's conclusions of law

Having accepted the trial court's findings of fact we now turn to the trial court's findings of law. As noted earlier, the court held that as a matter of law the spare tire was a "motor vehicle" in itself.

The court also held that because no claim of fraud was present, the facts found by the court constituted sufficient "physical contact" to fall within the policy of insurance. We speedily reject the legal conclusion that the tire is a motor vehicle. Just as a horseshoe is not a horse, so, too, a tire and rim is not a car. Neither is an abandoned muffler or a broken tailpipe. As was stated in *Blankenbaker v Great Central Insurance Co,* 151 Ind App 693, 701; 281 NE2d 496 (1972), "to reach any other conclusion would be a significant retreat from reality".

The court's conclusion as to physical contact raises a question of first impression in Michigan. The physical contact provision is designed to reduce the possibility of fraud. The purpose of the language is to prevent phantom vehicle claims— the possibility that a motorist who negligently lost control of his own vehicle would recover by alleging that an unknown vehicle caused him to lose control. *Lord v Auto-Owners Insurance Co,* 22 Mich App 669; 177 NW2d 653 (1970), *State Farm Mutual Auto Insurance Co v Spinola,* 374 F2d 873 (CA 5, 1967). Recently, physical contact has been stretched to include situations where no direct contact occurs. The most common circumstance in which recovery is thus permitted is the intervening vehicle situation where the hit-and-run vehicle strikes a second or intervening vehicle which in turn is propelled into the insured vehicle. Under these circumstances, there is a physical contact, although indirect or transmitted, between the insured vehicle and the hit-and-run vehicle. The possibility of fraud in such a situation is minimal. Because of these factors, apparently all courts have permitted recovery under the insured vehicle's hit-and-run coverage. *Louthian v State Farm Mutual Insurance Co,* 493 F2d 240, 242 (CA 4,

1973). Michigan courts are no exception. *Lord v Auto-Owners Insurance Co, supra.* Many of these cases have been collected in Anno: *Uninsured Motorist Indorsement: Validity and Construction of Requirement That There be "Physical Contact" with Unidentified or Hit-and-Run Vehicle* 25 ALR3d 1299.

The physical contact requirement has been further stretched to permit recovery where an object is propelled into the insured vehicle by another vehicle which does not stop. The primary example of such a situation is the case of a stone thrown off by the tires of a passing vehicle. *Barfield v Insurance Co of North America,* 59 Tenn App 631; 443 SW2d 482 (1968), and *Gavin v Motor Vehicle Accident Indemnification Corp,* 57 Misc 2d 335; 292 NYS2d 745 (1968), and Anno: 25 ALR3d 1299, *supra.* In *Allied Fidelity Insurance Co v Lamb,* 361 NE2d 174 (Ind App 1977), the Court upheld recovery where a truck propelled a rock through the windshield of the insured vehicle because "a substantial physical nexus between the unidentified vehicle and the intermediate object is established". 361 NE2d at 179. But some courts have refused to stretch the physical contact requirement to this degree. See *Smith v Great American Insurance Co,* 29 NY2d 116; 272 NE2d 528 (1971), *Government Employees Insurance Co v Goldschlager,* 44 App Div 2d 715; 355 NYS2d 9 (1974).

Likewise, courts confronted with a situation where, as in the instant case, a part of a vehicle is deposited on the highway by a preceding vehicle, have refused to loosen the physical contact requirement to permit recovery. In *Blankenbaker v Great Central Insurance Co,* 151 Ind App 693; 281 NE2d 496 (1972), plaintiff struck a tire and rim on the highway. The Court held that the physical

contact was "too remote and disconnected". In distinguishing this decision, the later *Lamb* court found that the indirect physical contact doctrine failed to permit recovery for plaintiff Blankenbaker because of "temporal and causal remoteness".

In *Wynn v Doe,* 255 SC 509; 180 SE2d 95 (1971), a vehicle driver skidded on oil spilled at some prior time by another vehicle. Recovery was denied because of lack of physical contact with the hit-and-run vehicle. Similarly, recovery is denied where an object is thrown from or propelled by an occupant of a passing vehicle and strikes the insured. *Ford v Monroe,* 559 SW2d 759 (Mo App, 1977), *Mazon v Farmers Insurance Exchange,* 107 Ariz 601; 491 P2d 455 (1971), *Aetna Casualty & Surety Co v Head,* 240 So 2d 280 (Miss, 1970).

A common thread runs through the cases cited and explains the difference between recovery in some instances and no recovery in others. Recovery is permitted where the evidence discloses a direct causal connection between the hit-and-run vehicle and plaintiff's vehicle and which connection carries through to the plaintiff's vehicle by a continuous and contemporaneously transmitted force from the hit-and-run vehicle. For example, the intermediate vehicle cases such as *Lord, supra,* are explained because there is evidence of a simultaneous causal connection. Similarly, in the propelled object cases such as *Lamb, supra,* there is a direct causal connection by means of a continuous and contemporaneously transmitted force. Further, in such cases there is convincing evidence of a hit-and-run vehicle. But where a tire or a trunk or other piece of cargo lying on the highway is struck and, unlike the propelled stone cases, there is no clear testimony but only an inference of a

contemporaneous and continuing propulsion of the object from a disappearing hit-and-run vehicle, recovery is denied. The chain of causation is stretched too thin and is too speculative.[8]

If the above analysis is correct, plaintiffs may not recover even though we accept as true the facts found by the trial court. Plaintiff stated she sighted the tire in the left lane of US-131 as she was passing a slower moving vehicle. No one saw the truck or trailer which dropped the tire. Nor did the slower moving vehicle which Kersten was passing stop, even though a violent accident had occurred just ahead of it. That an unidentified vehicle deposited the tire is inferred by the trial judge from the facts. But inferred facts do not show a *clearly definable* beginning and ending of a contemporaneously occurring chain of events. Nothing links the tire and rim with the hit-and-run vehicle except an inference drawn from the presence of a spinning tire and rim on the road. Both the intermediate vehicle cases and the propelled object cases require clearly definable or objective evidence (rather than inferential evidence) of a link between a disappearing vehicle and plaintiff's vehicle.

"We hold that the 'physical contact of such vehicle' includes the physical contact of that vehicle with an intermediate vehicle or other object which, in the same mechanism of the accident, strikes the assured's vehicle. * * * Specifically, the injury causing impact must have a complete, proximate, direct and timely relationship with the first impact between the hit-and-run

---

[8] Where objects are thrown by an occupant of a passing vehicle the transmitting force is the product of the occupant of the vehicle rather than the vehicle itself. Much the same analysis explains *Wynn v Doe, supra.* Whether or not the oil came from the hit-and-run car, there was no direct connection between the two vehicles because whatever force there might have been, had dissipated.

vehicle and the intermediate vehicle. In effect, the impact must be the result of an unbroken chain of events *with a clearly definable beginning and ending, occurring in a continuous sequence." Springer v Government Employees Insurance Co, Inc,* 311 So 2d 36, 39–40 (La App, 1975). (Emphasis supplied.)

*"Blankenbaker* is factually distinguishable from the case at bar. Here, a causal connection is established between the hit-and-run automobile and the intermediate propelled object. Here, the possibilities of fraud are remote. Here, there exists objective evidence from which the trier of fact could reasonably conclude that the unidentified vehicle was the original transmitter of the force causing the accident." *Allied Fidelity Insurance Co v Lamb, supra* at 178.

Judicial insistence upon a clearly definable or directly provable nexus between the hit-and-run vehicle and the injured party is predicated upon the prevention of fraud. While fraud is not suggested in this case the circumstances are highly susceptible to fraud. Each tire which is struck could be claimed to be spinning; each muffler, tailpipe or other part of a vehicle asserted to be bumping on the highway. In most cases, such accidents do not occur where other witnesses are present and, thus, as here, no one could disprove the injured party's statement of fact. In such circumstances it becomes easy to assert and hard to disprove the presence of a phantom vehicle. In our opinion, the possibilities of fraud are too great to conclude that, in the absence of proof more definite and specific than here, recovery was intended under the language of the insurance policy.

Our conclusion is supported by two other courts which have faced strikingly similar cases. In *Government Employees Insurance Co v Goldschlager,* 44 App Div 2d 715; 355 NYS2d 9 (1975), recovery under hit-and-run coverage was denied when a tire

and rim assembly bounded across a highway and struck the insured vehicle. The New York court held that the required physical contact with the hit-and-run vehicle was not met. In *Blankenbaker v Great Central Insurance Co, supra,*[9] the Court held:

"In the case before us; no other vehicle was shown to be within the area of the accident. There was a total lack of evidence tending to establish a causal connection between *some* vehicle and this tire and rim assembly. The assembly was not shown to be a part of a hit-and-run automobile, which is essential to invoking the indirect physical contact doctrine. *Amidzich v Charter Oak Fire Ins. Co, supra; State Farm Mutual Auto Ins. Co v Spinola, supra; Ely v State Farm Mutual Automobile Ins Co, supra.* Consequently, there was no physical contact, direct or indirect, with a hit-and-run 'automobile'." 151 Ind App at 702; 281 NE2d at 501–502.

Finally, we reject the argument that where there is no claim of fraud, the statutory and policy mandates of physical contact could be largely ignored. A similar claim was made and rejected in *Orpustan v State Farm Mutual Automobile Insurance Co,* 7 Cal 3d 988; 103 Cal Rptr 919; 500 P2d 1119 (1972).

"This uncontradicted fact, plaintiff says, should suffice where, as here, there is a clear absence of any fraud. But if the physical contact requirement could be satisfied by merely showing that the hit-and-run vehicle was the proximate cause of the accident, this provision

[9] In *Blankenbaker* the tire and rim were never found and Blankenbaker was unable to explain how it happened to be there but "assumed it was dropped by a large vehicle". Plaintiffs in the case before us would distinguish *Blankenbaker* on grounds that in the instant case a tire was found and when found, was spinning. However, the Indiana court *assumed* as true the fact that a large tire and rim was in the highway but declined to accept plaintiff's assumption "it was dropped by a large vehicle". Similarly, we hold that the trial court's assumption that the tire and rim just fell off a disappearing truck or trailer is insufficient proof to establish indirect physical contact.

would be largely written out of the statute. Thereby, the protection against phantom-car frauds would be diluted and the door reopened to the abuses which motivated the Legislature's imposition of the 'physical contact' requirement to come within the contemplated coverage of the statute." 7 Cal 3d at 993.

For all of the foregoing reasons we hold that the chain of physical contact between the unidentified hit-and-run vehicle and the Kersten car is too attenuated and too inferentially established to satisfy the physical contact requirement of the statute and policy as a matter of law even under the set of facts found by the trial court.

Reversed.

R. B. BURNS, J., concurred.

J. H. GILLIS, P. J. *(concurring)*. While I am in complete agreement with the result reached by the majority in the instant case, I am compelled to write separately in order to express my dissatisfaction with the factual findings made by the trial court.[1]

The majority opinion sets forth, in footnote 7, five possible explanations as to how the tire and rim happened to be in the middle of the highway when plaintiffs' car passed. The trial court determined that possibility number five explained the presence of the tire on the highway.

I cannot affirm the trial court's factual findings since I find them to be based upon speculation and conjecture. I believe that there are more than five plausible explanations as to how the tire and rim came to be upon the highway at the time of the accident.

Accordingly, I would find the trial court's factual findings erroneous and reverse on that basis as well.

---

[1] The majority concludes that these findings are not erroneous.