# STATE OF MICHIGAN

# COURT OF APPEALS

DANNY HERRERA,

      Plaintiff-Appellee,

v

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

      Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 329507
Wayne Circuit Court
LC No. 13-012042-NF

Before: RIORDAN, P.J., and FORT HOOD and SERVITTO, JJ.

PER CURIAM.

Defendant, State Farm Mutual Automobile Insurance Company, appeals as of right the order of final judgment entered by the trial court after its earlier denial of defendant's motion for summary disposition on the issue of liability.[1] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. FACTUAL BACKGROUND

In the afternoon on October 1, 2012, plaintiff was driving his three-wheeled motorcycle on Highway 401 in Canada, traveling back to Detroit with a group of six motorcyclists from the Warthogs Motorcycle Club. The group was returning home after attending a Canadian police memorial in Ottawa, Canada, that weekend. The weather was sunny, the roads were dry, and there was light to medium traffic, consisting of both trucks—some of which were "carrying loads"—and cars. There were two eastbound lanes and two westbound lanes, which were divided by a median that included large patches of weeds. The area was rural, and there were no

---

[1] The parties ultimately agreed on the issue of damages and entered into a settlement agreement four months after the trial court denied defendant's motion for summary disposition. In entering into the settlement agreement, defendant preserved its right to appeal the trial court's denial of its motion for summary disposition, and, accordingly, the final judgment included a stay of enforcement pending the resolution of defendant's appeal of the trial court's denial of its motion for summary disposition.

-1-

businesses nearby. The seven motorcyclists all were traveling in the left lane. Plaintiff was riding in the middle of the group, with riders in front and in back of him.

Suddenly, when the group was approximately 50 miles from the Ambassador Bridge, Raymond Nemeckay, one of the first motorcyclists, ran over a straight metal object that was lying almost all the way across the left lane of the highway.[2] Nemeckay first saw the object when he was approximately 100 yards away, initially thinking it was road tar, but then thinking it was a rubber strip as it grew closer. When Nemeckay ran over the metal object, it rattled and flopped, but remained on the highway. David Bowerman, who was riding behind Nemeckay, then ran over the object, causing it to flip into the air. As the object descended, it hit plaintiff's windshield, causing it to shatter. The object also struck plaintiff in the face, as demonstrated by the nature of plaintiff's injuries and the presence of hair and blood found on the object after the incident. Plaintiff's motorcycle veered to the left, and he fell off the motorcycle as it continued to drift to the left in the median between the eastbound and westbound lanes of the highway, where it ultimately stopped. As a result of the accident, plaintiff sustained serious injuries to his head and face, including his eyes and teeth, which required extensive medical treatment and multiple surgeries.

After the police and EMS arrived, Nemeckay found the metal object next to the road. A female police officer held the object while Nemeckay took a picture of it, which was attached as an exhibit to defendant's motion for summary disposition.

Plaintiff did not know where the object came from or how long it was in the road before it was struck by the group. None of the riders noticed a particular vehicle close to the group or saw how the metal object became deposited on the highway. However, Nemeckay explained during his deposition that he knew that the object came from a specific type of truck based on its design, and Larry Baareman, an expert in the trucking industry, also agreed that the object was a specific type of metal brace used to secure a protective covering on a truck.

In September 2013, plaintiff initiated this action, alleging that he is entitled to no-fault PIP benefits and UIM benefits from defendant, which defendant refused or failed to pay. Defendant denied that plaintiff was entitled to those benefits and filed a motion for summary disposition under MCR 2.116(C)(10), primarily arguing that there was no genuine issue of material fact that plaintiff was unable to demonstrate the requisite causation to claim entitlement to either PIP or UIM benefits. The trial court denied defendant's motion for summary disposition, ruling, with regard to both plaintiff's PIP benefits claim and UIM benefits claim, that "there's enough causal connection between having metal on the road that it came off of a motor vehicle or either [sic] a truck and hitting that piece of metal causing the accident . . . to deny the Motion for Summary Disposition. There's a basically a fact situation there." The court also stated, among other things, that "it seems that[] the majority of the cases seem to support the fact that if you can show that the metal came from a motor vehicle and . . . it's some scrap that was on the back of the motor vehicle, [and] was part of the motor vehicle itself, if there is such metal

---

[2] Plaintiff has no recollection of the accident. The last thing he remembers, before waking up in the hospital, is glancing at his GPS and noting that he was traveling at 62 miles per hour.

then there is a causal connection between the injury to the Plaintiff and the operation of the motor vehicle."

Subsequently, the parties entered into a settlement agreement. In September 2015, the trial court entered a final judgment in favor of plaintiff against defendant "in the amount of $499,399.84 ($399,399.84 for PIP claim; and $100,000 for uninsured motorist claim)." However, the final judgment also included a stay of enforcement pending resolution of defendant's appeal.

## II. STANDARD OF REVIEW

This Court reviews *de novo* a grant or denial of summary disposition. *Moraccini v Sterling Hts*, 296 Mich App 387, 391; 822 NW2d 799 (2012). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Cannon Twp v Rockford Pub Sch*, 311 Mich App 403, 411; 875 NW2d 242 (2015). When reviewing such a motion, this Court may only consider, in the light most favorable to the party opposing the motion, the evidence that was before the trial court, which consists of "the 'affidavits, together with the pleadings, depositions, admissions, and documentary evidence then filed in the action or submitted by the parties.' " *Calhoun Co v Blue Cross Blue Shield Michigan*, 297 Mich App 1, 11; 824 NW2d 202 (2012), quoting MCR 2.116(G)(5). Under MCR 2.116(C)(10), "[s]ummary disposition is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Bennett v Detroit Police Chief*, 274 Mich App 307, 319; 732 NW2d 164 (2006). However, "[t]his Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008).

Additionally, issues of statutory interpretation are reviewed *de novo* as questions of law. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). Likewise, we review *de novo* the construction and interpretation of an insurance policy and the question of whether the policy language is ambiguous. *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010), citing *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 353; 596 NW2d 190 (1999).

## III. PIP BENEFITS

Defendant first argues that the trial court improperly denied its motion for summary disposition because plaintiff failed to establish the requisite degree of causation to claim PIP benefits. We agree.

As an initial matter, defendant argues that plaintiff is not entitled to PIP benefits because he cannot satisfy the "physical nexus standard[.]" As plaintiff notes in his brief on appeal, and as discussed further under the next issue, different standards apply in cases involving first-party PIP benefits and cases claiming UIM benefits. See *Wills v State Farm Ins Co,* 222 Mich App 110,

118-119; 564 NW2d 488 (1997). However, the parties' dispute regarding the applicable standard does not stop there. Plaintiff also contends that MCL 500.3114(5) alone establishes the standard that applies in this case.[3] He is incorrect.

This Court expressly acknowledged in *Detroit Medical Center v Progressive Mich Ins Co*, 302 Mich App 392, 394; 838 NW2d 910 (2013), quoting *Jones v Tronex Chem Corp*, 129 Mich App 188, 191; 341 NW2d 469 (1983), that "[l]iability for no-fault personal protection benefits is governed by MCL 500.3105."[4] (Quotation marks omitted.) Pursuant to MCL 500.3105(1), " '[t]he no-fault act provides coverage for accidental bodily injury 'arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle.' " *Detroit Medical Center*, 302 Mich App at 394, quoting *Greater Flint HMO v Allstate Ins Co*, 172 Mich App 783, 786; 432 NW2d 439 (1988), quoting MCL 500.3105(1). Under the no-fault act, a motorcycle does not constitute a "motor vehicle." MCL 500.3101(2)(e);[5] *Detroit Medical Center*, 302 Mich App at 394-395. Thus, in order for an injured motorcyclist to recover first-party PIP benefits under the no-fault act, the " 'accident [must] arise[] out of the ownership, operation, maintenance or use of a [separate] motor vehicle.' " *Detroit Medical Center*, 302 Mich App at 395, quoting *Autry v Allstate Ins Co*, 130 Mich App 585, 590; 344 NW2d 588 (1983). See also *Underhill v Safeco Ins Co*, 407 Mich 175, 185-186; 284 NW2d 463 (1979); *Auto Club Ins Ass'n v State Auto Mut Ins Co*, 258 Mich App 328, 331; 671 NW2d 132 (2003) ("For a motorcyclist to be entitled to no-fault PIP benefits, the motorcycle accident must involve a motor vehicle."), citing MCL 500.3105.[6] MCL 500.3114(5) is relevant in determining whether a motorcyclist is entitled to recover no-fault benefits, but this subsection is only considered after

---

[3] MCL 500.3114(5) provides that "[a] person suffering accidental bodily injury arising from a motor vehicle accident *which shows evidence of the involvement of a motor vehicle* while an operator or passenger of a motorcycle shall claim personal protection insurance benefits from insurers in the following order of priority[.]" (Emphasis added.) The "involvement of a motor vehicle" standard is lower than the standard set forth in MCL 500.3105(1). See *Detroit Medical Center v Progressive Mich Ins Co*, 302 Mich App 392, 396 n 1; 838 NW2d 910 (2013).

[4] Given this Court's explicit identification of the statute governing no-fault liability, we reject plaintiff's claim that MCL 500.3114(5) alone establishes the standard applicable in this case. Although some cases, by using the word "involved" when discussing the applicable standard, may appear to rely on MCL 500.3114(5), it is apparent, in considering the statutory scheme as a whole and carefully reviewing Michigan caselaw interpreting MCL 500.3105 and MCL 500.3114, that MCL 500.3105(1) and the caselaw interpreting that subsection provide the relevant standard.

[5] At the time of the accident in this case, the definitions of "motorcycle" and "motor vehicle" were codified at MCL 500.3101(2)(c) and (2)(e), respectively. The statute was amended by 2014 PA 492, effective January 13, 2015. Those definitions are now codified at MCL 500.3101(2)(f) and (h), respectively. Motorcycles are excluded under the definition of "motor vehicle" under both versions of the statute.

[6] Plaintiff's insurance policy defines "motor vehicle" and "motorcycle" consistent with the no-fault act and provides coverage in accordance with the PIP provisions of the act.

-4-

it is first determined that the accident arose out of the ownership, operation, maintenance, or use of a motor vehicle. See *Turner*, 448 Mich at 34-35, 40-41 (providing a similar analysis in terms of MCL 500.3121(1) and MCL 500.3135, which include language parallel to MCL 500.3105(1) and MCL 500.3114(5)); *Detroit Medical Center*, 302 Mich App at 396 n 1 (citing *Turner*, 448 Mich at 35, 39, and discussing MCL 500.3114(5) and MCL 500.3105(1)).

Accordingly, the sole issue with regard to plaintiff's entitlement to PIP benefits is whether he established at least a genuine issue of material fact as to whether the accident in question arose out of the ownership, operation, maintenance, or use of a motor vehicle as a motor vehicle for purposes of MCL 500.3105(1). In *Detroit Medical Center*, this Court explained the degree of causation that is required under MCL 500.3105:

> There is no "iron-clad rule" as to what level of involvement is sufficient under MCL 500.3105. *Dep't of Social Services v Auto Club Ins Ass'n*, 173 Mich App 552, 557; 434 NW2d 419 (1988). However, "while the automobile need not be the proximate cause of the injury, there still must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile and which causal connection is more than incidental, fortuitous or but for." *Kangas v Aetna Cas & Surety Co*, 64 Mich App 1, 17; 235 NW2d 42 (1975). "The injury must be foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Id*. The causal connection between the injuries and the motor vehicle "cannot be extended to something distinctly remote," *Jones*, 129 Mich App at 192 (citation and quotation marks omitted); see also *Keller v Citizens Ins Co of America*, 199 Mich App 714, 715; 502 NW2d 329 (1993). Moreover, the injuries must be more than "tangentially related to the use of an automobile" to trigger the entitlement to no-fault benefits. *Bromley*, 113 Mich App at 135. Actual physical contact between a motorcycle and a motor vehicle is not required to establish the requisite involvement of a motor vehicle in an accident as long as "the causal nexus between the accident and the car is established." *Id*.; *Greater Flint HMO*, 172 Mich App at 788. For a motor vehicle to be involved in an accident, it "must actively, as opposed to passively, contribute to the accident," and have "more than a random association with the accident scene." *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 35, 39; 528 NW2d 681 (1995). "[T]here must be some activity, with respect to the vehicle, which somehow contributes to the happening of the accident." *Brasher v Auto Club Ins Ass'n*, 152 Mich App 544, 546; 393 NW2d 881 (1986). [*Detroit Medical Ctr*, 302 Mich App at 395-396 (footnote omitted).]

Even in considering the evidence presented below in the light most favorable to plaintiff, see *Calhoun Co*, 297 Mich App at 11, the trial court erred in concluding that there was a genuine issue of material fact regarding whether plaintiff is entitled to claim PIP benefits under MCL 500.3105(1).

In *Ricciuti v Detroit Auto Inter-Ins Exch*, 101 Mich App 683; 300 NW2d 681 (1980), the plaintiff brought an action for PIP benefits under the no-fault act after he sustained injuries when "his motorcycle skidded on a wet license plate lying in the road on an exit ramp, causing [him] to crash into a guardrail." *Id*. at 684. This Court quoted the causation test articulated in *Kangas*, 64

Mich App at 17, which was restated in *Detroit Medical Ctr*, 302 Mich App at 395-396, and then provided the following reasoning in support of its conclusion that the plaintiff had failed to establish the requisite causation to claim PIP benefits:

> Plaintiff herein argues that his injuries arose out of the ownership, maintenance, or use of a motor vehicle because the accident would not have occurred had not the license plate fallen from an automobile being driven on the highway. Plaintiff does not allege that the accident occurred immediately after the license plate fell off the car but that it occurred at least two days after the car had lost its license plate. The fact that the license plate had once been attached to an automobile does not supply a sufficient causal connection between ownership, use, or maintenance of a motor vehicle and the injury under the *Kangas* analysis. Plaintiff has merely shown that his accident was incidentally or fortuitously related to the ownership, use, or maintenance of a motor vehicle. [*Ricciuti*, 101 Mich App at 686.]

In this case, there was at least a genuine issue of material fact as to whether the metal object originated from a truck. However, none of the motorcyclists in the group watched the metal object fall from a truck or otherwise saw the metal object originate from a motor vehicle prior to the accident. Likewise, no one testified that they were following a truck with the type of covering that Nemeckay and Baareman, the trucking expert, believed the metal object was associated with, and no one specifically remembered any vehicles that they were following prior to the incident other than the fact that a variety of cars and trucks had been on the highway. Although the trucking expert believed that the metal object had fallen onto the highway relatively recently before the accident in light of Bowerman's and Nemeckay's testimony that the metal object was straight before they rode over it, there is still no indication that a motor vehicle engaged in any *activity* that played a causal role in the accident. See *Detroit Medical Ctr*, 302 Mich App at 395-396.

Therefore, here, as in *Ricciuti*, the fact that the metal object may have been previously attached to a truck "does not supply a sufficient causal connection between ownership, use, or maintenance of a motor vehicle and the injury . . . ." *Ricciuti*, 101 Mich App at 686. Instead, "[p]laintiff has merely shown that his accident was incidentally or fortuitously related to the ownership, use, or maintenance of a motor vehicle." *Id*. At most, an unknown motor vehicle may have passively contributed to plaintiff's accident by depositing a metal object in the road, which a motorcyclist in plaintiff's group subsequently ran over and thrust into the air. See *Detroit Medical Ctr*, 302 Mich App at 395-396. As a result, plaintiff's injuries are only tangentially related to the use of a motor vehicle, especially given the fact that, again, there is no evidence in the record that there was "some *activity*, with respect to the vehicle, which somehow contribute[d] to the happening of the accident." *Id*. (emphasis added; quotation marks and citations omitted). Moreover, the circumstances of plaintiff's injuries were not "foreseeably identifiable with the normal use, maintenance and ownership of the vehicle." *Id*. (quotation marks and citation omitted).

The trial court erroneously denied defendant's motion for summary disposition with regard to plaintiff's PIP benefits claim because reasonable minds could not differ in concluding that an unknown motor vehicle depositing a metal object in the road at some point prior to the

accident was merely an incidental, fortuitous, or "but for" cause of the accident. See *Allison,* 481 Mich at 425; *Detroit Medical Ctr*, 302 Mich App at 395-396.

## IV. UIM BENEFITS

Defendant also argues that the trial court improperly denied its motion for summary disposition because plaintiff failed to establish the requisite physical nexus to claim UIM benefits under his insurance policy with defendant. We disagree.

> Uninsured motorist insurance permits an injured motorist to obtain coverage from his or her own insurance company to the extent that a third-party claim would be permitted against the uninsured at-fault driver. Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the no-fault act. Accordingly, the rights and limitations of such coverage are purely contractual and are construed without reference to the no-fault act. [*McJimpson v Auto Club Group Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2016) (Docket No. 320671); slip op at 3, quoting *Rory v Continental Ins Co*, 473 Mich 457, 465-466; 703 NW2d 23 (2005).]

Therefore, "the general principles of contract interpretation apply to insurance policies," and "the court's role is to determine what the agreement was and effectuate the intent of the parties." *McJimpson*, ___ Mich App at ___; slip op at 3 (quotation marks and citations omitted). See also *Dancey*, 288 Mich App at 8.

> This Court reads an insurance contract as a whole, with meaning given to all terms. Policy language should be given its plain and ordinary meaning, and unless a contract provision violates [the] law or one of the traditional defenses to the enforceability of a contract applies, a court must construe and apply unambiguous contract provisions as written. [*McJimpson*, ___ Mich App at ___; slip op at 3-4 (quotation marks and citations omitted).]

Because it is undisputed that the owner or driver of the vehicle that may have deposited the metal object at issue in this case is unknown, plaintiff's claim for UIM benefits falls under the provisions pertaining to unidentified "hit-and-run" vehicles. The "insuring agreement" section of the uninsured motor vehicle provisions in the policy provides:

We will pay compensatory damages for bodily injury an insured is legally entitled to recover from the owner or driver of an uninsured motor vehicle. The bodily injury must be:

> 1. sustained by an insured, and

> 2. caused by an accident that involves the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle. [Bolded and italicized emphasis omitted.]

Under the "additional definitions" section of the policy pertaining to uninsured vehicles, "uninsured motor vehicle" is defined, in relevant part, as "a 'hit-and-run' land motor vehicle or motorcycle the owner and driver of which remain unknown and which strikes: a. the insured; or

b. the vehicle the insured is occupying and causes bodily injury to the insured." (Italicized emphasis, bolded emphasis, and multi-line formatting omitted.)

The trial court properly concluded that there was a genuine issue of material fact as to whether plaintiff is entitled to recover UIM benefits. As an initial matter, it is important to note that the policy does not expressly incorporate the standard for PIP benefits under MCL 500.3105(1) discussed under the previous issue. The policy provides that defendant will only provide UIM benefits if the bodily injury was "caused by an accident *that involves* the operation, maintenance, or use of an uninsured motor vehicle as a motor vehicle" (emphasis added), whereas MCL 500.3105 provides that "an insurer is liable to pay [PIP] benefits for accidental bodily injury *arising out of the* ownership, operation, maintenance or use of a motor vehicle as a motor vehicle . . . ." (Emphasis added). And, again, "the rights and limitations of [uninsured motorist] coverage are purely contractual and *are construed without reference to the no-fault act*." *McJimpson*, ___ Mich App at ___; slip op at 3 (quotation marks and citation omitted; emphasis added). See also *Wills*, 222 Mich App at 118 ("[W]e reject the trial court's attempt to apply cases regarding the recovery of no-fault personal protection insurance benefits to the case at bar."). Thus, this Court is not constrained to conclude that plaintiff is not entitled to UIM benefits in this case in light of the fact that plaintiff is not entitled to no-fault PIP benefits as a matter of law.

Under the terms of the insurance policy and binding Michigan caselaw, the evidence presented below establishes a genuine issue of material fact as to whether the accident "involve[d] the operation, maintenance, or use of an insured motor vehicle as a motor vehicle," and whether the unidentified hit-and-run vehicle "str[uck]: a. the insured; or b. the vehicle the insured is occupying . . . ." As denoted by the term "strikes," the policy requires physical contact between a hit-and-run vehicle and the insured or the vehicle that the insured is occupying. See *Merriam-Webster's Collegiate Dictionary* (11th ed) (defining "strike," in relevant part, as "to come into contact forcefully," "to bring into forceful contact," and "to come into contact or collision with").[7] Defendant contends on appeal that there is no genuine issue of material fact as to whether a hit-and-run vehicle struck, or had physical contact with, plaintiff in this case. Michigan caselaw undermines defendant's position.

This Court has repeatedly construed similar "hit-and-run" provisions in uninsured motorist contracts as providing coverage even if the accident involves "indirect physical contact" (*e.g.*, when the insured comes into contact with an object that is cast off or falls off a vehicle that leaves the scene). *Berry v State Farm Mut Auto Ins Co*, 219 Mich App 340, 347; 556 NW2d 207 (1996). In those cases, coverage has been found as long as the proofs establish "a substantial physical nexus between the disappearing vehicle and the object cast off or struck . . . ." *Id*. See also *Wills*, 222 Mich App at 114-116; *Kreager v State Farm Mut Auto Ins Co*, 197 Mich App

---

[7] When terms are not defined in an insurance policy, we turn to dictionary definitions in order "to ascertain the plain and ordinary meaning of these terms as they would appear to a reader of the contract." *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 294; 778 NW2d 275 (2009).

577, 582; 496 NW2d 346 (1992); *Hill v Citizens Ins Co of America*, 157 Mich App 383, 394; 403 NW2d 147 (1987). This Court recently reaffirmed those principles in *McJimpson*, ___ Mich App ___; slip op at 4-5, which discussed *Hill*, *Berry*, and *Wills* and explained that in cases involving insurance policies that require " 'physical contact' between the vehicles but do not include the phrase 'cause an object to hit,' " "we have held that both *direct* and *indirect* contact [is] sufficient to trigger coverage and that contact with a propelled object constitutes indirect contact [provided that] there is a 'substantial physical nexus' between the propelled object and the unidentified vehicle." The Court also noted that a policy drafted in accordance with the language in *Hill*, *Berry*, and *Wills* would have provided coverage for the plaintiff in *McJimpson*, whose vehicle was struck by a piece of metal that flew off a semi-truck in front of her. *McJimpson*, ___ Mich App at ___; slip op at 5. However, the *McJimpson* Court determined that the policy language at issue in that case was distinct from that in *Hill*, *Berry*, and *Wills*, concluding that the narrower language at issue in *McJimpson* only provided for coverage "where the unidentified vehicle makes 'direct contact' with the insured or her vehicle." *Id*.

Notably, the State Farm UIM provisions in the policies at issue in *Berry*, 219 Mich App at 342-343, and *Wills*, 222 Mich App at 111-112, were nearly identical, in all relevant respects, to those in the instant case.[8] In both of those cases, this Court recognized that the insurance contract dictates the circumstances under which UIM benefits will be awarded and then applied the "substantial physical nexus" test that is associated with the physical contact requirements in UIM policies. *Wills*, 222 Mich App at 114-115; *Berry*, 219 Mich App at 346-348.

Accordingly, because it is clear that this Court implicitly concluded in *Wills* and *Berry* that the language at issue in those cases—and also at issue in the instant case—includes a "physical contact requirement," which encompasses both direct and indirect physical contact and implicates the substantial physical nexus test, we will apply those standards in this case.[9] Moreover, given this Court's previous interpretations of the policy language at issue in this case, we conclude that defendant is incorrect that the language in its policy "only provides for a recovery where the insured is actually struck by an uninsured motor vehicle," not "where an unknown vehicle causes an object to hit an insured." In *Berry*, 219 Mich App at 347, this Court explained,

> The physical contact requirement is designed to reduce the possibility of fraudulent phantom vehicle claims. Thus, there must be some sort of actual physical contact between the hit-and-run vehicle and the insured or the insured's vehicle. However, this Court has construed the physical contact requirement broadly to include indirect physical contact, such as where a rock is thrown or an

---

[8] For this reason, defendant's reliance on the outcome of *McJimpson* is misplaced.

[9] Notably, State Farm, who is also the defendant in this case, argued in *Wills* that it was entitled to judgment as a matter of law because there was no genuine issue of material fact concerning whether the "plaintiff's vehicle was ever struck by the unidentified vehicle," and this Court discussed the substantial physical nexus requirement in response to that argument. *Wills*, 222 Mich App at 114-118.

object is cast off by the hit-and-run vehicle, as long as a substantial physical nexus between the disappearing vehicle and the object cast off or struck is established by the proofs. [Citations omitted.]

Therefore, "[a] 'substantial physical nexus' between the unidentified vehicle and the object causing the injury to the insured has been found where the object in question was a piece of, or projected by, the unidentified vehicle, but not where the object originates from an occupant of an unidentified vehicle." *Wills*, 222 Mich App at 115, citing *Berry*, 219 Mich at 350, *Kreager*, 197 Mich App at 579, and *Adams v Zajac*, 110 Mich App 522, 526-527; 313 NW2d 347 (1981). "[T]he presence of a 'continuous and contemporaneously transmitted force' is a significant, but not dispositive, factor to be considered in indirect contact cases in determining whether the requisite substantial physical nexus has been established." *Berry*, 219 Mich App at 351 (referring to the requirement of a "continuous and contemporaneous force" in *Kersten v Detroit Auto Inter-Ins Exch*, 82 Mich App 459, 471; 267 NW2d 425 (1978)). Rather, a substantial physical nexus may be found where "there is testimony that provides the convincing and objective evidence of a hit-and-run vehicle in the absence of a continuous and contemporaneously transmitted force," or, stated differently, where evidence "establishes a continuous sequence of events with a clearly definable beginning and ending, resulting in plaintiff's coming into contact with the piece of metal." *Berry*, 219 Mich App at 351. However, despite the language in *Berry*, "an affirmative link between a particular hit-and-run vehicle and [an object] lying in the roadway" need not be established. *Dancey*, 288 Mich App at 21. Instead, "[t]he *Berry* holding simply discussed a situation in which the Court determined that a 'substantial physical nexus' was established by the proofs." *Id*.

Here, plaintiff proffered evidence that, if believed by the trier of fact, could constitute "convincing and objective evidence of a hit-and-run vehicle in the absence of a continuous and contemporaneously transmitted force." *Berry*, 219 Mich App at 351. The deposition testimony regarding the location of the accident and the expert witness's testimony that the metal object was a specific part of a truck strongly support an inference that the metal object at issue in this case fell off a truck and caused plaintiff's accident. See *Dancey*, 288 Mich App at 18.

First, there is no indication that pedestrians accessed the area where the accident occurred. In their depositions, the motorcyclists in plaintiff's group consistently testified that cars and trucks comprised the light to medium traffic on the highway. There was no testimony that any pedestrians were present on the highway or normally accessed the highway. Rather, the motorcyclists consistently testified that the area was rural, or "farm country," and there were no businesses in the area of the freeway. In addition, there was a patch of weeds in the median that was approximately six feet tall and extended 50 to 60 yards, making it highly unlikely that pedestrians would cross the highway at that location.

Furthermore, the motorcyclists stated that the object was straight before it hit plaintiff and noticeably bent after it hit plaintiff.[10] Nemeckay also explained that he knew that the metal

---

[10] The photograph of the metal object in the lower court file, taken after the incident, shows that it was conspicuously bent and dented following the collision.

became bent when it hit plaintiff in the face because there was blood and facial hair on the object after the incident. Further, Bowerman stated that "[t]here were vehicles all over the place in front of us, because we were not going that fast at the time," meaning that the object "had to just fall of – whatever it came from, there was [sic] no vehicles in front of us [that] avoided it. So it had to be fairly recent. I mean it was quick." All of this testimony supports an inference that the object had not been on the freeway for an extended period of time and that the group of motorcyclists were the first to strike the object.

There also was significant evidence demonstrating, at the least, a genuine issue of material fact that the metal object originated from a specific type of truck. Nemeckay repeatedly testified that he knew that the metal object was a piece that held up a canopy or canvas on "a stake bed semi," explaining that he had seen such objects on trucks in the past. Likewise, Larry Baareman, the trucking expert, believed, based on the picture of the bent metal object, the police accident report, and Nemeckay's and Bowerman's deposition testimony, "that the piece of metal depicted in Exhibit B is part of a metal brace used to secure the protective covering required on trucks to prevent portions of the load from spilling out of the truck bed." He also stated that it is his "unequivocal opinion," based on the picture as well as his extensive knowledge of and experience with the trucking industry, "that the piece of metal depicted in Exhibit B was dislodged and fell from a truck on Highway 301 near Dillon Road on October 1, 2012" relatively shortly before the accident in light of Bowerman's and Nemeckay's testimony that the metal object was straight before they rode over it.

Based on this evidence, a reasonable juror could infer that there was no logical explanation for the metal object to be on the roadway except that it fell off a truck. Therefore, the presence of the metal object on the highway—based on the surrounding circumstances and the absence of any other reasonable explanation for the metal object's presence—established a substantial physical nexus between a hit-and-run vehicle and the object. See *Dancey*, 288 Mich App at 20-21. Moreover, the circumstances of this case are not highly susceptible to fraud given the multiple witnesses who provided testimony regarding the way in which the object struck plaintiff and the photograph of the metal object. See *Berry*, 219 Mich App at 347, 351-352, citing *Kersten*, 82 Mich App at 473. Cf. *Kersten*, 82 Mich App at 469 ("The purpose of the [physical contact] language is to prevent phantom vehicle claims the possibility that a motorist who negligently lost control of his own vehicle would recover by alleging that an unknown vehicle caused him to lose control."). Therefore, plaintiff established a genuine issue of material fact as to whether he is entitled to UIM benefits under his insurance policy with defendant.

Finally, contrary to defendant's claims, we note that the fact that the metal object was thrown into the air by another motorcycle immediately before it hit plaintiff—and not directly cast off by a hit-and-run vehicle—does not entitle defendant to judgment as a matter of law on this issue. Again, indirect physical contact is sufficient under the policy language as long as a substantial physical nexus exists, *Berry*, 219 Mich App at 347, and this Court has found that the physical contact requirement is met in cases where the contact is transmitted through an intermediate vehicle, see *Lord v Auto-Owners Ins Co*, 22 Mich App 669, 671-672; 177 NW2d

653 (1970).[11]  Similarly, here, there is no indication that the substantial physical nexus was destroyed by the other motorcycles involved in the incident, especially given the fact that the accident clearly was caused by the metal object that had been deposited on the roadway, not by the other motorcycles.

For all of the foregoing reasons, the trial court properly denied defendant's motion for summary disposition with regard to this claim.

## V. CONCLUSION

The trial court erroneously denied defendant's motion for summary disposition with regard to plaintiff's PIP benefits claim, but properly denied defendant's motion with regard to plaintiff's UIM benefits claim.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Karen M. Fort Hood
/s/ Deborah A. Servitto

---

[11] This Court relied on *Lord* in *Wills*, 222 Mich App at 117.  See also *Kersten*, 82 Mich App at 469-470.